UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEO FELIX CHARLES | : | PRISONER |
| | : | NO. 3:02CV1341(AWT)(WIG) |
| VS. | : | |
| | : | |
| JACK MALEH, ET AL. | : | NOVEMBER 12, 2004 |

### THE DEFENDANTS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants moves for summary judgment against the plaintiff's claims. The plaintiff – an inmate confined to the custody of the Connecticut Department of Correction ("DOC") – brings numerous claims against the defendants concerning his medical and dental treatment, as well as other aspects of his confinement. Summary judgment is appropriate for the following reasons:

1. There are no material issues in dispute concerning the adequacy of the medical and dental treatment that the defendants afforded the plaintiff.

2. The plaintiff's claims against defendant Mingzer Tung are barred by the statute of limitations.

3. There are no material issues of fact in dispute concerning the plaintiff's claim that he was retaliated against.

4. The plaintiff does not have a constitutional right to telephone calls.

5. The plaintiff did not suffer a loss of good time concerning the disciplinary tickets at issue and has therefore has no liberty interest in being placed in segregation.

6. There are no material issues of fact in dispute concerning the plaintiff's claims of conspiracy and discrimination.

7. The plaintiff has failed to show personal involvement of defendants Armstrong and Rodriguez.

8. The defendants are immune from suit based on the doctrine of qualified immunity.

## I. FACTS

This is a pro se 42 U.S.C. § 1983 civil rights action in which the plaintiff, an inmate confined to the custody of the DOC, alleges numerous violations of his constitutional rights. The plaintiff alleges that the defendants have been deliberately indifferent to his medical and dental needs. In addition, he alleges that they have engaged in a conspiracy to discriminate and retaliate against him because of his racial background (African and Haitian).

The undersigned respectfully refers the court and the plaintiff to the Local Rule 56 Statement of Facts and the documents attached thereto for a full description of the factual background for this case.

## II. STANDARD OF REVIEW

Summary judgment is appropriately granted when evidentiary records show that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323, 324 (1986).

While the Court must view the facts presented in the light most favorable to the party opposing the motion, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a Motion for Summary Judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Additionally, "mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1990). Once the movant has met his burden, "the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

### III.   ARGUMENT

#### A.   Medical Care

To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 291 (1976). Mere negligence will not support a Section 1983 claim. The conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp.

203, 232 (S.D.N.Y. 1988 ) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970).  A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind."  Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

Inmates do not have a constitutional right to the treatment of their choice.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  Thus, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment.  Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Hathaway, supra, 37 F.3d at 66 (quoting Nance v. Kelley, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)).  See, e.g., Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1998) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instructions), cert. denied, 401 U.S. 983 (1971).  Not all medical conditions, however, are considered "serious."  See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988) (kidney stones); Malsh v. Austin, 901 F. Supp. 757 (S.D.N.Y. 1995) (delay in

providing routine dental treatment); May v. Baldwin, 895 F. Supp. 1398 (D.Or. 1995) (dry skin); Glasper v. Wilson, 559 F. Supp. 12 (W.D.N.Y. 1982) (bowel problems).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Chance, supra, 143 F.3d at 702. "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The evidence as set forth above and contained in the affidavits submitted with this case indicate that the defendants were not deliberately indifferent to the plaintiff's medical needs. Indeed, the opposite is the case.

### 1. Defendants Tung and Cooper Were not Deliberately Indifferent to the Plaintiff's Medical Needs[1]

The plaintiff presents a number of complaints of deliberate indifference to his medical needs. These complaints center around pain in his right shoulder which he believed requires surgery. The plaintiff contends that he was only given Motrin and similar medication for the pain in spite of his requests for stronger pain relief.

---

[1] Defendant Jack Maleh, M.D. is deceased and the defendants filed a suggestion of death on October 18, 2004.

It is abundantly clear from the plaintiff's own factual recitation that Dr. Tung was not deliberately indifferent to his needs. By his own admission, he informed Dr. Tung of his complaints of pain and, in response, Dr. Tung informed him that the x-rays indicated that surgery wasn't necessary. Dr. Tung prescribed Motrin for the pain. (See, e.g., ¶¶ 24, 26 & 33.) Dr. Tung was obviously not indifferent to the plaintiff's medical condition. Rather, the plaintiff (a non-medical expert) simply disagrees with the course of treatment recommended by Dr. Tung. Such a disagreement does not give rise to a § 1983 claim.

On a more fundamental level, the plaintiff's claims against Dr. Tung must fail. There is a three-year statute of limitations for § 1983 actions. Barrow v. Wethersfield Police Dept., 66 F.3d 446 (2d Cir. 1995). This case was filed on August 5, 2002. Any claims prior to August 5, 1999 are barred. The latest act in the complaint by Dr. Tung with which the plaintiff objects took place on November 6, 1998 or slightly later. (Complaint, ¶¶ 46 & 47.)

Concerning the plaintiff's claims against defendant Cooper, it is not entirely clear what the plaintiff's allegations of wrongdoing are. For example, the plaintiff asserts that on October 2, 2000 he wrote a letter to Cooper asking to see his medical records. (Id., ¶ 69.) The plaintiff concedes that two days later he was escorted to the prison hospital so that he could review his medical records. (Id., ¶ 70.) The plaintiff next asserts that he spoke to Cooper about his x-rays and why he could not have shoulder surgery. (Id., ¶¶ 71-72.) The plaintiff appears to hold Cooper responsible for his inability to obtain surgery.

The plaintiff's claims against Cooper are without merit. Cooper is a nurse and not a physician. He does not approve surgery or schedule it. The failure of a grievance coordinator to respond to an inmate's request cannot be grounds for deliberate indifference unless this failure results in medical services being denied. There is no evidence of that in this case given that: (1) Cooper did not approve or schedule surgery; and (2) the decision by DOC physicians not to operate on the plaintiff's shoulder long-predated the plaintiff's alleged discussions with Cooper.

### 2.     Lack of Personal Involvement by Defendants Armstrong and Rodriguez

Personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages under 42 U.S.C. § 1983. Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989); Williams v. Smith, 781 F.2d 319 (2d Cir. 1986); Ayers vs. Coughlin, 780 F.2d 205 (2d Cir. 1985); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977); cert. denied, 434 U.S. 1087 (1978). The doctrine of respondeat superior is not applicable to § 1983 cases. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 692-95 (1978).

A supervisory official who has not directly participated in the conduct complained of may be found personally involved in the deprivation of an inmate's right in other ways. For example, he may have failed to remedy the wrong after the violation was brought to his attention through a report or appeal; created, or permitted to continue, the policy or custom pursuant to which the alleged violation occurred; or been grossly negligent in managing officials under his supervision who caused the unlawful incident. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citing, Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

7

There is no evidence that either Armstrong or Rodriguez were personally involved in the plaintiff's medical treatment. These two DOC officials are not medical personnel and therefore had no responsibility in the treatment decisions at issue. While the plaintiff did write letters to Armstrong and Rodriquez complaining about his treatment, the responses from these defendants indicated that they had his allegations investigated.

### 3. The DOC is not Currently Indifferent to the Plaintiff's Medical Needs

In the plaintiff's request for injunctive relief, he complains about a number of health problems and lists tests which he believes are medically appropriate. As detailed in the affidavit of Dr. Ricardo Ruiz, the plaintiff's medical needs are being addressed appropriately. The plaintiff's request for injunctive relief should be denied.

### B. Dental Care

#### 1. Defendants Young and Shivy Were not Deliberately Indifferent to the Plaintiff's Medical Needs

The evidence in this case demonstrates that neither Dr. Young or Dr. Shivy (the two defendants who are dentists) were not deliberately indifferent concerning the plaintiff's dental needs.

With respect to Dr. Shivy, the dental records show that the plaintiff saw Dr. Shivy on several occasions. These records further show that Dr. Shivy treated the plaintiff's condition to the extent possible within the confines of Cheshire's dental department. The same is true with respect to Dr. Young. A review of the records indicate that Dr. Young saw the plaintiff on

several occasions. Dr. Young informed the plaintiff that he had to take better care of his teeth and that his dental problems stem from years of neglect on the part of the plaintiff.

In any event, the plaintiff's claims of wrongdoing by Drs. Young and Shivy concern an alleged lack of treatment for which these defendants are not responsible. For example, the plaintiff is upset that these defendants did not refer him to a periodonist or provide him with a "periochip." However, as Dr. Shivy testifies, periodontal treatment is not provided in the DOC. With respect to the periochip, this is also not provided. The decisions concerning staffing and the types of treatment available are outside the controls of Drs. Shivy and Young. The defendants cannot be held to be deliberately indifferent to the plaintiff's dental needs when policy (which they have no part in) prohibits the very treatment requested by the plaintiff.

### 2. Lack of Personal Involvement by Defendants Armstrong and Rodriguez

For the reasons set forth above with respect to the plaintiff's medical treatment, the plaintiff is unable to demonstrate the personal involvement by defendants Armstrong and Rodriguez in the dental treatment afforded to the plaintiff. As the affidavit of Dr. Victor Shivy makes clear, dental treatment at Cheshire is provided by the dental staff. Neither Armstrong or Rodriquez were members of the dental staff or responsible for dental policy.

### 3. The DOC is not Currently Indifferent to the Plaintiff's Dental Needs

The plaintiff seeks injunctive relief against the State to order it to provide what he feels is appropriate medical treatment. A review of the plaintiff's dental records indicate that he has not asked to see a dentist while at Cheshire for at least 2 years. Since the plaintiff has not signed up to see dental, the State cannot be found to be deliberately indifferent to his known needs. The plaintiff's claim for injunctive relief concerning his dental treatment should therefore be dismissed.

### C. Retaliation

In paragraphs 216 through 221, the plaintiff sets forth a claim of retaliation. Specifically, the plaintiff alleges that virtually everything that has happened to him with which he is unhappy is the product, not of his own actions, but of the actions of others. These include his placement in segregation, the alleged failure of DOC staff to answer his grievances, his dental and medical treatment, his disciplinary tickets, his placement in a mental health unit, and his transfers to and from Cheshire.

The Court of Appeals for the Second Circuit has placed a high burden on inmates in showing that they have been the victims of unconstitutional retaliation. "[P]risoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be

characterized as a constitutionally proscribed retaliatory act." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d. Cir. 1983).

The plaintiff's retaliation claim should be dismissed. There is no evidence that the defendants have retaliated against the plaintiff. Indeed, the evidence is to the contrary. Nurse Husband has testified that the plaintiff's version of events in which allegedly urinated on himself is a fabrication. Likewise, while the plaintiff takes issue with the disciplinary tickets received, Lieutenant Maylor (the disciplinary hearing officer) testified that he was never informed by any of the defendants to discriminate or retaliate against the plaintiff. Dr. Shivy likewise has testified that at no time since his employment at Cheshire since 1992 has any of the defendants ever ordered or suggested that he retaliate or discriminate against an inmate.

The plaintiff's allegations of retaliation are purely speculative and should be dismissed.

### D. Telephone Privileges

In paragraphs 222 through 228, the plaintiff asserts that while placed in protective custody he was unable to place a telephone call to his girlfriend. In fact, he alleges that from September 26, 2000 until the time of the complaint he has been unable to telephone his girlfriend. The plaintiff further alleges that White, Hispanic and Puerto Rican inmates in protective custody are able to use the telephones without difficultly. He claims that DOC personnel prohibit him from using the telephone.

The plaintiff's claim fails for two reasons. First, as detailed in the Affidavit of Counselor Scott Hadlock, inmates are not treated differently in Cheshire with respect to phone privileges

because of their racial or ethnic backgrounds.  Second, and more fundamentally, inmates do not have a right under the State or Federal constitutions to make phone calls.  Washington v. Meachum, 238 Conn. 692 (1996).

### E.      Discrimination

In paragraphs 184 through 200, the plaintiff alleges that he has been the subject of discrimination in violation of his rights   Although this particular count references alleged conduct by Nurse Husband, the plaintiff makes repeated allegations of discrimination throughout the complaint.  (See, e.g., ¶¶ 254 & 300.)  The gravamen of the plaintiff's argument is that he is being treated differently because he is of African and Haitian descent, whereas White, Hispanic and Puerto Rican inmates are treated fairly.  The plaintiff asserts that this alleged discrimination constitutes a violation of his rights under the fourteenth amendment to the United States Constitution.

Like the plaintiff's claims of retaliation, this claim is without merit.  This is most clearly seen in reference to his assertion that Nurse Husband treated him differently with respect to the use of the prison bathroom from other inmates.  As Nurse Husband testified, she did not deny his request to use the bathroom.  She informed him that if a male correction officer wished to escort him to the bathroom, she had no objection.  However, for reasons of safety and privacy, she could not permit him to use the bathroom alone.  As another example, the plaintiff claims that other inmates were provided with dental treatment that he wasn't.  (Complaint, ¶ 290.)  This is

again without merit. The DOC does not provide inmates with periodontal treatment. Therefore, any claim of discrimination in this regard is baseless.

The plaintiff's claims of discrimination are identical to his claims of retaliation and conspiracy. They are without merit and should be dismissed.

**F.     Denial of Due Process**

In paragraphs 201-215 of the complaint, the plaintiff takes issue with disciplinary tickets he received on June 7, 10, and 19, 2002. The plaintiff asserts that he was denied due process for these tickets.

The plaintiff received three disciplinary tickets in June 2002. These were on June 3, 10 and 27. It is undisputed that the petitioner did not lose good time as a result of these tickets. No case at any judicial level in Connecticut has ever held that a disciplinary ticket not resulting in loss of good time credits may be challenged on the basis of a lack of due process. In fact, the courts have held the converse, i.e., that a ticket may only be challenged if the ticket caused the inmate to lose previously earned good time credits. See, e.g., Abed v. Armstrong, 43 Conn. App. 176, 181-82 (1996). Sanctions of the type received by plaintiff – punitive segregation[2], loss of

---

[2] The petitioner spent a total of 22 days in punitive segregation for his June 2002 disciplinary infractions. The United States Supreme Court, in Sandin v. Connor, 515 U.S. 472 (1995), held that placing an inmate in segregation did not constitute a violation of a protected liberty interest so long as the segregation did not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In Sealey v. Giltner, 197 F.3d 578 (2d Cir. 1999), the Court of Appeals held that confinement in segregation for a period of 101 days did not constitute "atypical" confinement. Id. at 589-90. Even if the

communication privileges, and loss of visitation privileges – do not affect any protected liberty interest.  See Santiago v. Commissioner, 39 Conn. App. 674, 680 (1995).  Therefore, the petitioner's claim that he there were procedural irregularities are irrelevant.  To the extent that the petitioner has lost the ability to earn good time as the result of his placement in punitive segregation, that is merely a classification issue which is within the discretion of the Commissioner of Correction and does not state a liberty interest.  See Abed, supra, id.

**IV.   QUALIFIED IMMUNITY**

To the extent that the court finds that Armstrong or Rodriguez had personal involvement in medical care afforded the plaintiff, they are protected by the doctrine of qualified immunity. The doctrine of qualified immunity shields state officials from liability for damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  The Second Circuit has described the circumstances where qualified immunity would apply as follows:

> a government official sued in his individual capacity … is entitled to qualified immunity in any of three circumstances:  (1) if the conduct attributed to him is not prohibited by federal law …; or (2) where the conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct …; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] … in light of the

---

petitioner had a liberty interest in remaining in general population and not being placed in segregation, his placement in segregation did not affect the fact or duration of his confinement.

> legal rules that were clearly established at the time it was taken.' These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third.

X-Men Security, Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999) (citations omitted).

A right is clearly established if a reasonable person in the defendant's position should know that his or her actions violate that right. The unlawfulness must be apparent. McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (citation omitted). In other words, a state official should not be forced to have to defend his actions against civil rights challenges unless the state of the law at the time of the alleged conduct gave him "fair warning" that his actions were unlawful. Hope v. Pelzer, 122 U.S. 1508, 1516 (2002).

In the present case, the plaintiff was seen by numerous DOC physicians and dentists. While the plaintiff may have wrote letters to Armstrong and Rodriguez complaining about the treatment he received, there is no reason to believe that they ignored his complaints. In fact, in documents attached to the plaintiff's complaint, there are responses from Armstrong and Rodriguez indicating that they referred his complaints to appropriate DOC personnel to investigate. (See, e.g., Complaint, Exhibits 25 & 68.) The undersigned is unaware of any cases indicating that non-medical administrators such as these defendants may not refer complaints of medical mistreatment to other DOC officials for investigation.

Defendant Cooper is also protected by qualified immunity. In his role as grievance coordinator, he responded to inmate requests for medical treatment. Even if he was tardy in

responding to these requests, there is no case law imposing liability on grievance coordinators. In fact, the case law is otherwise. In <u>Taylor v. Martin</u>, 2000 U.S. Dist. LEXIS 15836 at * 14 (W.D. Mich. 2000), the court dismissed an inmate's civil rights complaint against a grievance coordinator who denied the inmate's grievances requesting medical treatment. The court stated: "Plaintiff has not alleged any other facts to show that Brevard [the grievance coordinator] actively participated in the denial of his medication and thus, Brevard's denial of plaintiff's grievance does not rise to the constitutional level."[3]

Defendant Husband is likewise protected by qualified immunity. Although she strenuously denies the plaintiff's version of events, even if true the plaintiff's allegations concern one incident in which she did not take steps to prevent him from urinating on himself. The most that case law prohibits is inmates who are restrained from being denied the use of bathroom facilities. <u>See</u>, <u>e.g.</u>, <u>Davis v. Lester</u>, 156 F. Supp. 2d. (W.D.Va. 2001); <u>Rogers v. Dunn</u>, 2001 U.S. Dist. LEXIS 22710 (N.D. Iowa).[4] The situation here was obviously quite different. The plaintiff had the opportunity to use toilet facilities in his cell before or after the trip to medical.

## V.   THE DEFENDANTS ARE IMMUNE FROM SUIT IN THEIR OFFICIAL CAPACITY

To the extent that any of the claims in this case survive summary judgment, it is well established that the plaintiff may not maintain actions against a defendant in his official capacity

---

[3] This decision is attached at Exhibit A.

[4] This decision is attached as Exhibit B.

due to the Eleventh Amendment to the United States Constitution. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989).

## VI. **CONCLUSION**

For the reasons set forth above, the defendants urge that the motion for summary judgment be granted.

DEFENDANTS,
Jack Maleh, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:__/s/_____
Neil Parille
Assistant Attorney General
Federal Bar No. ct15278
110 Sherman Street
Hartford, CT 06105
Tel.: (860) 808-5450
Fax: (860) 808-5593
neil.parille@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 12th day of November 2004 to:

Leo Felix Charles, Inmate No. 193138
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT 06410                    __/s/_____
                                      Neil Parille
                                      Assistant Attorney General