LEXSEE 2001 U.S. DIST. LEXIS 22710

**JEFFREY CARDELL ROGERS, Plaintiff, vs. DEPUTY JAMES ALAN DUNN, DEPUTY STEVEN McELMEEL, and SGT. LYNN JOHNSON, Defendants.**

No. C00-0188-PAZ

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA, CEDAR RAPIDS DIVISION

2001 U.S. Dist. LEXIS 22710

November 27, 2001, Decided

**DISPOSITION:** [*1] Court awarded compensatory damages to Plaintiff and against Defendant.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff prisoner sought damages from defendant sergeant and deputies arising against an incident in which he was restrained at the county jail on a restraining device known as "the board." The prisoner alleged violations of his rights under the Eighth Amendment.

**OVERVIEW:** The court held that restraining the prisoner on the board was continued beyond any reasonable need for such measures and was clearly outside the exercise of good judgment. While arguably the initial restraint of the prisoner on the board was justifiable force applied in a good faith effort to maintain discipline, the eight-hour duration clearly was not justified by the record. No evidence was offered that indicated the prisoner presented a physical threat to inmates or staff or that jail security was jeopardized in any way. Rather, the actions of the sergeant were taken for no reason other than to punish the prisoner for verbal abuse and to inflict pain, humiliation, and suffering upon the prisoner. The cruelty in the actions became clear and excessive when the prisoner was denied the basic necessity of relieving his bodily fluids. Moreover, the court held that the sergeant was not entitled to qualified immunity. Finally, the court did not find that the deputies violated the prisoner's constitutional rights.

**OUTCOME:** The sergeant was not entitled to qualified immunity and compensatory damages were awarded to the prisoner and against the sergeant. The court further found no constitutional violations by the deputies.

**LexisNexis(R) Headnotes**

*Constitutional Law > Cruel & Unusual Punishment*
[HN1] See U.S. Const. amend. VIII.

*Constitutional Law > Cruel & Unusual Punishment*
[HN2] The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Still, the Eighth Amendment does not authorize judicial reconsideration of every governmental action affecting the interests or well-being of a prisoner; instead, after incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. The Eighth Amendment does not require a specific intent to punish a specific individual; rather, the basic threshold of the Eighth Amendment is that the offending conduct must be wanton. Wantonness does not have a fixed meaning, but rather must be determined in relation to the type of conduct on which the suit is based.

*Constitutional Law > Cruel & Unusual Punishment*
[HN3] There are two standards by which prison officials' conduct may be evaluated in determining whether an inmate's Eighth Amendment rights were violated. The deliberate indifference standard is employed in conditions of confinement cases; i.e., cases in which the officials' conduct ordinarily does not clash with other equally important governmental responsibilities. Under

Case 3:02-cv-01341-AWT    Document 55-4    Filed 11/15/2004    Page 2 of 6

Page 2
2001 U.S. Dist. LEXIS 22710, *

the deliberate indifference standard, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Constitutional Law > Cruel & Unusual Punishment*
[HN4] In cases where officials must take measures to resolve disturbances, the deliberate indifference standard does not adequately capture the importance of the competing obligations of ensuring the safety of both the prison staff and the inmates themselves, nor does it convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance. In such a setting, a court must look at whether the officials' actions were taken in a good faith effort to maintain or restore discipline or whether they acted maliciously and sadistically for the very purpose of causing harm. Maliciously and sadistically have different meanings, and the two together establish a higher level of intent than either would alone. One acts maliciously by undertaking, without just cause or reason, a course of action intended to injure another. In contrast, one acts sadistically by engaging in extreme or excessive cruelty or delighting in cruelty.

*Constitutional Law > Cruel & Unusual Punishment*
[HN5] How long restraint may be continued calls for the exercise of good judgment on the part of prison officials. The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation.

*Constitutional Law > Cruel & Unusual Punishment*
[HN6] Mere verbal abuse by an inmate does not justify eight hours of immobility on "the board."

*Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials*
[HN7] Qualified immunity extends to a prison official if his conduct does not violate clearly established constitutional rights of which a reasonable person would have known. A right is clearly established for qualified immunity purposes if: The contours of the right are sufficiently clear that a reasonable official would understand that what he did violated that right. This is not to say that an official's action is protected by qualified immunity unless the very action in question has previously been held unlawful, but is to say that in light of pre-existing law the unlawfulness of the official action must be apparent.

*Constitutional Law > Civil Rights Enforcement > Immunity > Public Officials*
[HN8] Although a prison official is not always immune from liability merely because there is no case establishing a constitutional right in identical circumstances, if there is a legitimate question as to whether the more particularized constitutional right exists under the facts of the case, it cannot be said that the prison official's action violated clearly established law. The threshold legal question in analyzing a qualified immunity claim is whether the plaintiff has alleged a constitutional violation at all. Then, if a constitutional violation has occurred, a concomitant question of law must be determined: was the constitutional right clearly established at the time the defendants acted?

*Constitutional Law > Cruel & Unusual Punishment*
[HN9] A prisoner's right to be free from cruel and unusual punishment, and specifically unreasonable and unjustifiable punishment employed for the sole purpose of causing pain, has long been clearly established.

**COUNSEL:** For JEFFREY CARDELL ROGERS, plaintiff: Rockne Cole, Mears Law Office, Iowa City, IA.

Jeffrey Cardell Rogers, plaintiff, Pro se, Cedar Rapids, IA.

For JAMES ALAN DUNN, STEVEN MCELMEEL, defendants: Todd Davis Tripp, Linn County Attorney Office, Cedar Rapids, IA.

**JUDGES:** PAUL A. ZOSS, MAGISTRATE JUDGE, UNITED STATES DISTRICT COURT.

**OPINIONBY:** PAUL A. ZOSS

**OPINION:** ORDER AND JUDGMENT

The plaintiff Jeffrey Cardell Rogers ("Rogers") seeks damages from the defendants arising from an incident in which he was restrained at the Linn County Jail in Cedar Rapids, Iowa, on a restraining device known as "the board." The central question in this case is whether the manner in which the board was used to restrain Rogers constituted a violation of Rogers's rights under the Eighth Amendment to the United States Constitution. n1

> n1 [HN1] The Eighth Amendment provides: "Excessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted." (Emphasis added.)

[*2]

## I. INTRODUCTION

Rogers filed this 42 U.S.C. § 1983 action on December 7, 2000. (Doc. No. 3.) Venue is proper in this district as the defendants reside, and the events giving rise to this action, all occurred in this district. 28 U.S.C. § 1391(b). In an amended complaint filed on June 21, 2001 (Doc. No. 16), Rogers claims the defendants violated his constitutional rights by using excessive force in restraining him. (Id., P 2) He seeks compensatory and punitive damages, a declaratory judgment, court costs, and attorney fees.

The parties consented to trial, disposition and judgment of this matter by a United States Magistrate Judge, and on July 2, 2001, the Honorable Mark W. Bennett transferred this case to United States Magistrate Judge Paul A. Zoss for further proceedings (Doc. No. 19).

This case came before the court for bench trial on October 15, 2001, at the United States Courthouse in Cedar Rapids, Iowa. Rogers was not present for trial, but testified in his own behalf by telephone. He was represented by attorney Rockne Cole. The defendants were represented by Assistant Linn County Attorney Todd Tripp. During the course of [*3] the trial, the court admitted into evidence, without objection, Plaintiff's Exhibits 1, 2, 3, and 4, and Defendants' Exhibits A, B, C, D, E, and F. Also testifying at the trial were the defendants James Dunn ("Deputy Dunn"), Steve McElmeel ("Deputy McElmeel"), and Lynn Johnson ("Sergeant Johnson"), all Linn County Deputy Sheriffs at the time in question, and Linn County Deputy Sheriff Joel Peshek ("Deputy Peshek"). The court now deems the matter to be fully submitted for judgment on the merits, and turns to consideration of the evidence presented at trial.

## II. THE EVIDENCE

The facts are not materially disputed. On October 31, 2000, Rogers was an inmate at the Linn County Jail. Because of a series of behavior problems, which included personal threats directed at several of the guards, he was being held in a disciplinary cell on the fifth floor of the jail. Two other inmates also were in the cell.

At about 4:30 p.m., Deputy Dunn brought dinner trays to the three occupants of the cell. Deputy Dunn opened the cell door and tried to hand out the dinner trays. Rogers suspected, without any real reason, that Deputy Dunn had tampered with his dinner tray, and told Deputy Dunn that he [*4] wanted a different tray. Deputy Dunn held the dinner tray out for Rogers, and when Rogers did not take it, Deputy Dunn dropped the tray on the floor.

As Deputy Dunn started to leave the cell, Rogers prevented him from closing the cell door with his foot. Deputy Dunn decided this was a security breach, and tried to take Rogers to the floor. Rogers resisted, and a fight ensued. Deputy McElmeel helped Deputy Dunn subdue Rogers. Rogers suffered minor injuries in the altercation, but the court finds the force used by the deputies to subdue him was reasonably necessary and not excessive.

The deputies then consulted with their supervisor, Sergeant Johnson, who decided that Rogers should be restrained on "the board." Rogers was strapped face down on the board, with straps securing his head, arms, legs, and body, so that he was completely immobilized. n2 The board was placed on the floor of the fifth floor near the elevator, where Rogers could be observed by Deputy Peshek via a security camera and where Sergeant Johnson could easily observe Rogers on his hourly rounds.

> n2 Rogers claims he was stripped, and then placed on the board naked. The other witnesses either testified this was not true, or they did not recall that Rogers was naked. The court finds as a matter of fact that Rogers was clothed while he was restrained on the board.

[*5]

Rogers was left strapped to the board for eight hours, and was removed only after Sergeant Johnson's shift ended at midnight. Deputy Peshek neither saw nor heard any problems with Rogers during the eight hours, but Sergeant Johnson testified that each time he checked up on Rogers, Rogers was verbally abusive. Rogers denies any verbal abuse, but after considering all the evidence, including Rogers's history of problems at the jail, the court finds Rogers was continually verbally abusive toward Sergeant Johnson.

At some point while he was strapped to the board, Rogers told jail officials that he had to urinate. He was advised that he should urinate on himself, which he did. Sergeant Johnson testified this is the common practice for inmates strapped to the board.

## III. CONCLUSIONS OF LAW

### A. Eighth Amendment Violation

The first issue to address is whether, by strapping Rogers to "the board" for eight hours, Rogers's rights under the Eighth Amendment to the United States Constitution were violated.

[HN2] The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v.

Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) [*6] (quoting Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)). Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Farmer, 511 U.S. at 832, 114 S. Ct. 1970. Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986); instead, "after incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. at 319, 106 S. Ct. 1078 (internal quotation marks omitted); accord Rodgers v. Thomas, 879 F.2d 380, 384 (8th Cir. 1989). The Eighth Amendment does not require a specific intent to punish a specific individual; rather, the basic threshold of the Eighth Amendment is that the offending conduct must be wanton. Wilson v. Seiter, 501 U.S. 294, 302, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). Wantonness does not have a fixed meaning, but rather must be determined in relation to the type of conduct on which the suit is based. [*7] Id.

[HN3] The Supreme Court has identified two standards by which prison officials' conduct may be evaluated in determining whether an inmate's Eighth Amendment rights were violated. The deliberate indifference standard is employed in conditions of confinement cases; i.e., cases in which the officials' conduct "ordinarily [does not] clash with other equally important governmental responsibilities." Whitley, 475 U.S. at 319-20. Under the deliberate indifference standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847, 114 S. Ct. at 1984.

[HN4] In cases where officials must take measures to resolve disturbances, the "deliberate indifference standard does not adequately capture the importance" of the competing obligations of ensuring the safety of both the prison staff and the inmates themselves, nor does it "convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without [*8] the luxury of a second chance." Whitley, id.; accord Ruffin v. Taylor, 166 F. Supp. 2d 999, 2001 WL 1148938 at **5-6 (D. Del. 2001) In such a setting, a court must look at whether the officials' actions were taken "'in a good faith effort to maintain or restore discipline'" or whether they acted "'maliciously and sadistically for the very purpose of causing harm.'" Starbeck v. Linn County Jail, 871 F. Supp. 1129, 1147 (N.D. Ia. 1994) (quoting Whitley, 475 U.S. at 320-21; other internal quotation marks omitted); see also Wilson, 501 U.S. at 302; Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992); Farmer, 511 U.S. at 835-36, 114 S. Ct. at 1978. "Maliciously" and "sadistically" have different meanings, and the two together establish a higher level of intent than either would alone. One acts "maliciously" by undertaking, without just cause or reason, a course of action intended to injure another. In contrast, one acts "sadistically" by engaging in extreme or excessive cruelty or delighting in cruelty. Howard v. C.O., 21 F.3d 868, 872 (8th Cir. 1994). [*9]

In the present case, the court finds the force employed by Deputies Dunn and McElmeel to restrain Rogers after he prevented his cell door from being closed was not excessive under the circumstances. Such force was clearly taken only to restore order and discipline in the cell.

In addition, although the court disapproves of use of the board, the court also finds limited use of the restraining device would not have violated Rogers's Eighth Amendment rights. However, the court finds leaving Rogers strapped to the board for eight hours did violated Rogers's Eighth Amendment rights.

[HN5] "How long restraint may be continued calls for the exercise of good judgment on the part of prison officials." Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991).

The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation.

Williams, 943 F.2d at 1576 (citing Ort v. White, 813 F.2d 318, 324 (11th Cir4. 1987). Restraining [*10] Rogers on "the board" was continued beyond any reasonable need for such measures and clearly outside the exercise of good judgment by Sergeant Johnson. While arguably the initial restraint of Rogers on "the board" was justifiable force applied in a good faith effort to maintain discipline, cf. Spain v. Procunier, 600 F.2d 189, 197 (9th Cir. 1979), the eight-hour duration clearly was not justified by the record in this matter. No evidence was offered that indicated Rogers presented a physical threat to inmates or staff or that jail security was jeopardized in any way. n3 [HN6] Mere verbal abuse by an inmate does not justify eight hours of immobility on "the board." Rather, the actions of Sergeant Johnson were taken for no reason other than to punish Rogers for verbal abuse and to inflict pain, humiliation, and suffering upon Rogers. The cruelty in Sergeant Johnson's actions became clear and excessive when Rogers was denied the basic necessity of relieving his bodily fluids:

Case 3:02-cv-01341-AWT   Document 55-4   Filed 11/15/2004   Page 5 of 6

Page 5
2001 U.S. Dist. LEXIS 22710, *

Roger had no choice but to urinate on himself, and then lay in his urine. While Sergeant Johnson checked on Rogers once in awhile, no documentation of reviews and evaluations were [*11] offered evidencing any justification for the excessive eight hours Rogers spent immobilized on the board. n4

> n3 The instant case is distinguishable from Stenzel v. Ellis, 916 F.2d 423 (8th Cir. 1990). In Stenzel, the inmate-plaintiff refused three orders from correctional officers to "show skin" -- a security measure undertaken to ensure that inmates are in their cells and not contriving an escape plot. Based in part on the inmate's previous history of assaultive behavior and escape, correctional officers immediately moved the inmate to isolation. Once in isolation, and because the inmate continuously attempted to cover the security camera, the inmate was not permitted to use the toilet and he urinated in his pants. Unlike the instant case, Stenzel involved a situation where the inmate continued to present a security threat and the force taken was necessary to quell that risk.

> n4 See LeMaire v. Maass, 12 F.3d 1444, 1447-49 (9th Cir. 1993) ( record made in the district court contained "meticulously documented" evidence of the plaintiff's "numerous egregious violations of prison rules" including repeated brutal assaults on guards and other prisoners, which was found by the Ninth Circuit to justify his lengthy confinement in four-point restraints); Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991) (upholding a lengthy confinement on the strength of factual findings that during his incarceration the plaintiff had been convicted of eighty-four charges of violating prison regulations, including seventy-five major violations for "assault, failure to obey, threats, insubordination, intentionally creating a security hazard and inciting to riot"). <p>

 [*12]
Accordingly, the court finds Sergeant Johnson violated Rogers's Eighth Amendment rights. The court finds no constitutional violations by Deputy Dunn and Deputy McElmeel.

B. Qualified [HN7] Immunity

Qualified immunity extends to a prison official if his "conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); accord Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); Siegert v. Gilley, 500 U.S. 226, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991); Brown v. Nix, 33 F.3d 951, 953 (8th Cir. 1994). A right is "clearly established" for qualified immunity purposes if: The contours of the right [are] sufficiently clear that a reasonable official would understand that what he did violated that right. This is not to say that an official's action is protected by qualified immunity unless the very action in question has previously been held unlawful, but is to say that in light of pre-existing law the unlawfulness [of the official action] must be apparent.

Anderson, 483 U.S. at 640, 107 S. Ct. 3034 [*13] (citation omitted). In other words, [HN8] although a prison official is not always immune from liability merely because there is no case establishing a constitutional right in identical circumstances, if there is a legitimate question as to whether the more particularized constitutional right exists under the facts of the case, it cannot be said that the prison official's action violated clearly established law. Brown v. Frey, 889 F.2d 159, 165 (8th Cir. 1989).

"The threshold [legal] question in analyzing a qualified immunity claim is whether the plaintiff has alleged a constitutional violation . . . at all." Thomas v. Hungerford, 23 F.3d 1450, 1452 (8th Cir. 1994) (citing Siegert , 500 U.S. at 232, 111 S. Ct. 1789). Then, if a constitutional violation has occurred, a concomitant question of law must be determined: was the constitutional right, as defined by Anderson v. Creighton, clearly established at the time the defendants acted?

This court has found Sergeant Johnson violated Rogers's Eighth Amendment right to be free from the unnecessary and wanton infliction of pain, meeting the first prong of the analysis. Turning to the second prong, [*14] [HN9] a prisoner's right to be free from cruel and unusual punishment, and specifically unreasonable and unjustifiable punishment employed for the sole purpose of causing pain, has long been clearly established. See e.g., Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986); Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992); Wilson v. Seiter, 501 U.S. 294, 302, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991); and other cases discussed in this opinion. The court finds Sergeant Johnson reasonably should have known keeping Rogers on the board for eight hours was excessive, and holds he is not entitled to qualified immunity.

VI. CONCLUSION

The court finds for Defendants Deputy Dunn and Deputy McElmeel and against Plaintiff Rogers on the claim that

Case 3:02-cv-01341-AWT   Document 55-4   Filed 11/15/2004   Page 6 of 6

Page 6
2001 U.S. Dist. LEXIS 22710, *

Dunn and McElmeel violated Rogers's constitutional rights. The court finds for Plaintiff Rogers and against Defendant Sergeant Johnson on the claim that Defendant Johnson violated Rogers's Eighth Amendment rights. The court further finds Sergeant Johnson is not entitled to qualified immunity, and awards compensatory damages to Rogers and against Johnson [*15] in the amount of $ 1,500.00.

Roger's attorney shall file a motion for attorney fees in accordance with Rule 54(d)(2)(B), Federal Rules of Civil Procedure, and Local Rule 54.2.

IT IS SO ORDERED.

DATED this 27 day of November, 2001.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT