UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEO FELIX CHARLES | : | PRISONER |
| | : | NO. 3:02CV1341(AWT)(WIG) |
| VS. | : | |
| | : | |
| JACK MALEH, ET AL. | : | NOVEMBER 12, 2004 |

## THE DEFENDANTS' LOCAL RULE 56(A)(1) STATEMENT

Pursuant to Local Rule 56(a)(1), the defendants submit this statement of facts as to which they contend there is no genuine issues to be tried.[1]

## INTRODUCTION

1. The plaintiff is an inmate confined to the custody of the Commissioner of the Connecticut Department of Correction ("DOC"). (Movement Sheet.)

2. John Armstrong was the Commissioner of the DOC from 1995 to 2003. He is retired from the DOC.

---

[1] This statement of facts makes reference to the following documents: (1) the plaintiff's amended complaint dated February 27, 2004 ("complaint"); (2) the plaintiff's movement sheet ("Movement Sheet") attached as Ex. A; (3) the plaintiff's disciplinary history report ("Disciplinary History") attached as Ex. B; (4) Affidavit of Pauline Husband dated October 21, 2004 ("Husband Aff.") attached as Ex. C; (5) Affidavit of Samuel Maylor dated October 28, 2004 ("Maylor Aff.") attached as Ex. D; (6) Affidavit of Dr. Victor Shivy dated October 27, 2004 ("Shivy Aff.") attached as Ex. E; (7) Affidavit of Scott Hadlock dated October 27, 2004 ("Hadlock Aff.") attached as Ex. F; (8) Affidavit of Maurice Cooper dated November 1, 2004 ("Cooper Aff.") attached as Ex. G; (9) Affidavit of Ricardo Ruiz, M.D. dated November 10, 2004 ("Ruiz Aff.") attached as Ex. H; (10) Affidavit of Donna Gleason dated October 29, 2004 ("Gleason Aff.") attached as Ex. I; (11) Clinical Record of Leo Felix Charles ("Clinical Record") attached as Ex. J; and (12) X-Ray findings of Leo Felix Charles ("X-rays") attached as Ex. K.

3. Hector Rodriguez was the Warden of Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut from 2001 to 2003. He is retired from the DOC. http://www.ct.gov/doc/cwp/view.asp?a=1499&q=265398

4. Jack Maleh, M.D. was employed by UCONN Correctional Managed Health Care. He is deceased. (Ruiz Aff., ¶ 5.)

5. Mingzer Tung is a physician employed by UCONN Correctional Managed Health Care. (Id., ¶ 6.)

6. Victor Shivy is a dentist employed by UCONN Correctional Managed Health Care. He has been stationed at Cheshire since 1992. (Shivy Aff., ¶ 3.)

7. Pauline Husband is a Licensed Practical Nurse licensed to practice in the State of Connecticut. She has been stationed at Cheshire from approximately 2000 to the present. (Husband Aff., ¶ 3.)

8. Michael Young is a dentist employed by UCONN Correctional Managed Health Care. He is currently on leave from the DOC because of an assignment in the United States Military. (Shivy Aff, ¶ 22.)

9. Maurice Cooper is a registered nurse who was employed by the DOC and stationed at Cheshire until 2003. (Cooper Aff., ¶ 2.)

10. Samuel Maylor is an employee of the DOC. He holds the rank of Lieutenant and was a disciplinary hearing officer for various DOC facilities in the Cheshire complex of institutions. (Maylor Aff., ¶¶ 2-3.)

11. The plaintiff was most recently admitted to the DOC on May 2, 1997. (Movement Sheet.)

12. The plaintiff has been confined to Cheshire for the majority of times since his most recent admission to the DOC. (Id.)

**BATHROOM INCIDENT**

13. During the time in question (April 2002), there was only one bathroom at Cheshire medical. This bathroom was for the exclusive use of staff and not inmates. Inmates were aware of this fact and therefore knew that they should use their prison bathroom prior to coming to medical if they felt necessary. (Husband Aff., ¶ 5.)

14. There was another bathroom in the storage room near the medical station. This bathroom was used by inmates to give urine samples, or if they had an urgent need to use the bathroom and could not wait until they returned to their cell. If it became necessary to use this bathroom, a male correctional officer had to accompany the inmate due to safety and privacy concerns. (Id., ¶ 6.)

15. The plaintiff requested to use the bathroom in the storage room. Nurse Husband informed him that if a guard wished to accompany him, she did not have an objection. However, since the plaintiff and other inmates were about to return to their cells, the guard elected not to permit the plaintiff to use the bathroom. (Id., ¶ 7.)

16. The plaintiff returned to his cell and did not urinate on himself in the medical area as he alleges in this lawsuit. (Id., ¶ 8.)

17.     The policy mentioned above was applied uniformly and without exception. Inmates were not treated differently based on whether they were White, Hispanic or Black. (Id., 9.)

**DISCIPLINARY TICKETS**

18.     On May 22, 2002, the plaintiff received a disciplinary ticket for disobeying a direct order. As a result of that ticket, the plaintiff was placed in punitive segregation for 10 days and confined to quarters for 30 days. The plaintiff did not lose good time as a result of that ticket. (Disciplinary History.)

19.     On June 3, 2002, the plaintiff received a disciplinary ticket for threats. As a result of that ticket, the plaintiff was placed in punitive segregation for 7 days and lost social visitation privileges for 60 days. The plaintiff did not lose good time as a result of that ticket. (Id.)

20.     On June 10, 2002, the plaintiff received a disciplinary ticket for making threats. As a result of that ticket, the plaintiff was sentenced to 15 days in segregation, was confined to quarters for 30 days, and lost telephone privileges for 90 days. The plaintiff did not lose good time as a result of the ticket. (Id.)

21.     On June 27, 2002, the plaintiff received a disciplinary ticket for contraband. The plaintiff received a punishment of 15 days loss of telephone privileges. The plaintiff did not lose good time as a result of this ticket. (Id.)

**PHONE CALLS**

22.     Inmates at Cheshire are given limited phone privileges. (Hadlock Aff., ¶ 5.)

23. Inmates are permitted to make calls to people on a call list. They are given the opportunity to add or remove names from the list once a month. (Id.)

24. The protective custody unit at Cheshire does not discriminate between Whites, Hispanics and Blacks in the provision of phone privileges to inmates. (Id.)

25. None of the defendants contacted Counselors Hadlock directing him to discriminate against or retaliate against the plaintiff concerning his telephone privileges. (Id., ¶ 8.)

**DENTAL TREATMENT**

26. The dental records indicate that Dr. Shivy saw the plaintiff on several occasions. (Shivy Aff., ¶ 6)

27. On August 5, 1998, Dr. Shivy saw the plaintiff and noted that he had poor oral hygiene. (Id., ¶ 7.)

28. On December 16, 1998, Dr. Shivy saw the plaintiff and noted that his oral hygiene was poor. Dr. Shivy stressed the importance of good oral hygiene. (Id., ¶ 8.)

29. On September 1, 1999, Dr. Shivy saw the plaintiff. The plaintiff requested scaling, and Dr. Shivy informed him the plaintiff that the physical set-up at Cheshire did not permit this type of treatment. (Id., ¶ 9.)

30. On October 19, 1999, Dr. Shivy and noted that he had generalized 4-5 mm defects in his mouth and his oral hygiene was poor. Dr. Shivy told the plaintiff that as a result of his poor oral hygiene he risked tooth loss. (Id., ¶ 10.)

31. On November 11, 1999, Dr. Shivy saw the plaintiff and noted that his oral hygiene was somewhat better. (Id., ¶ 11.)

32. On December 18, 2000, Dr. Shivy saw the plaintiff and noted that his oral hygiene was again poor. Dr. Shivy stressed that it was important for him to maintain good oral hygiene. (Id., ¶ 12.)

33. On January 24, 2001, Dr. Shivy saw the plaintiff and informed him that extractions were necessary. The plaintiff did not want to have these teeth extracted and Dr. Shivy informed him that he should advise dental if he changed his mind. (Id., ¶ 13.)

34. On some occasions Dr. Shivy saw the plaintiff he complained that his gums were bleeding. For this reason, Dr. Shivy stressed the importance of good oral hygiene. The plaintiff did not complain of pain. (Id., ¶ 14.)

35. Dr. Shivy addressed his concerns to the extent possible within the confines of the care available at the Cheshire dental unit. (Id., ¶ 15.)

36. Dr. Shivy was not been deliberately indifferent to the plaintiff's needs. (Id., ¶ 15.)

37. Dental policy is established by Utilization Review Committee ("URC") of UCONN Correctional Managed Health Care. (Id., ¶ 16.)

38. Dr. Shivy has never been a member of the URC and therefore had had no role in the determination of this policy. (Id., ¶ 17.)

39. Dr. Shivy is not responsible for the levels of staffing or the type of dental care provided at Cheshire. (Id., ¶ 18.)

40. The plaintiff has requested to see a periodonist in order to receive periodontal treatment. (Id., ¶ 19.)

41. Periodontal treatment is advanced treatment of the gums. (Id., ¶ 20.)

42. Periodontal treatment is not provided within the Connecticut Department of Correction. It has never been provided by the DOC. (Id., ¶ 21.)

43. On September 11, 2001, the plaintiff sent a request to dental asking for treatment of his gum pockets with a periochip. (Id., ¶ 22.)

44. A periochip is a chip inserted in the periodontal pocket, the active ingredient of which is Chlorhexidine. This type of treatment has never been provided within the DOC. It was considered experimental in 2001. (Id.)

45. Dr. Michael Young saw the plaintiff on several occasions. (Shivy Aff., Dental Records.)

46. Dr. Young addressed the plaintiff's dental needs to the extent possible within the limitations imposed by the Cheshire dental unit. (Id.)

47. Dr. Young is not a member of the URC and is not responsible for the staffing at Cheshire or the types of treatment provided. (Shivy Aff., ¶ 22.)

48. The plaintiff has not signed up to see dental at Cheshire since September 2002. (Gleason Aff., ¶ 6.)

49. The will be seeing a dentist at Cheshire by November 15, 2004. (Id., ¶ 7.)

**MEDICAL TREATMENT**

50. The plaintiff complained of pain in his right shoulder from at least 1997. (Clinical Record, Entry 6/6/97.)

51. X-rays were taken of the plaintiff's shoulder in June 1997. (X-Rays.)

52. The x-rays indicated that surgery was not necessary. (X-Rays.)

53. Dr. Tung prescribed Motrin for the plaintiff's shoulder pain in 1997 and 1998. (Clinical Record, Entry 11/6/98.)

54. Dr. Tung saw the plaintiff on December 4, 1998. The plaintiff complained of pain in his left breast and Dr. Tung ordered x-rays. (Id., Entry 12/4/98.)

55. Maurice Cooper is not a physician and therefore is not qualified to make a decision concerning whether a patient needs surgery. (Cooper Aff., ¶ 6.)

56. Decisions approve surgery and the scheduling thereof are made by the URC. (Id., ¶ 7.)

57. Maurice Cooper was never a member of the URC. (Id., ¶ 8.)

58. The Department of Correction is providing acceptable medical treatment to the plaintiff. (Ruiz Aff.)

**DISCRIMINATION, RETALIATION & CONSPIRACY**

59. None of the defendants has discriminated against the plaintiff in the provision of dental care, medical care, the imposition of discipline, or telephone privileges. (See Husband Aff. ¶¶ 9-12 .; Maylor Aff., ¶¶ 5-6.; Cooper Aff., ¶¶ 9-10; Hadlock Aff.¶¶ 6-8; Shivy Aff., ¶ 24.)

60. None of the defendants has retaliated against the plaintiff in the provision of dental care, medical care, the imposition of discipline, or telephone privileges. (See Husband Aff. ¶¶ 9-12 .; Maylor Aff., ¶¶ 5-6.; Cooper Aff., ¶¶ 9-10; Hadlock Aff.¶¶ 6-8; Shivy Aff., ¶ 24.)

61. None of the defendants has conspired against the plaintiff in the provision of dental care, medical care, the imposition of discipline, or telephone privileges. (See Husband Aff. ¶¶ 9-12 .; Maylor Aff., ¶¶ 5-6.; Cooper Aff., ¶¶ 9-10; Hadlock Aff.¶¶ 6-8; Shivy Aff., ¶ 24.)

**PERSONAL INVOLVEMENT OF ARMSTRONG AND RODRIGUEZ**

62. When the plaintiff contacted defendants Armstrong and Rodriguez concerning his complaints of mistreatment, they referred his complaints to competent members of the DOC staff. (Complaint, Exs. 25, 68, 73, 78A, 92.)

63. Defendants Armstrong and Rodriguez were not members of the Cheshire medical staff. (Ruiz Aff., ¶ 4.)

DEFENDANTS,
Jack Maleh, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:__/s/_____
Neil Parille
Assistant Attorney General
Federal Bar No. ct15278
110 Sherman Street
Hartford, CT 06105
Telephone No.: (860) 808-5450
Fax No.: (860) 808-5593
neil.parille@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 12th day of November, 2004 to:

Leo Felix Charles, Inmate No. 193138
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT 06410

    /s/_____
Neil Parille
Assistant Attorney General