# EXHIBIT C

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEO FELIX CHARLES | : | PRISONER |
| | : | |
| V. | : | CIV. NO. 3:02CV1341(AWT)(WIG) |
| | : | |
| JACK MALEH, ET AL | : | |

### AFFIDAVIT OF PAULINE HUSBAND

STATE OF CONNECTICUT    )
                                            ) s.s. Cheshire, Connecticut
COUNTY OF NEW HAVEN    )

I, Pauline Husband, having been duly sworn, deposes and says that:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am an employee of the Department of Correction of the State of Connecticut.

3. I am a licensed practical nurse, licensed to practice in the State of Connecticut. I have been stationed at the Cheshire Correctional Institution ("Cheshire") since approximately 2000 to the present. I am familiar with the day-to-day provision of medical services at Cheshire.

4. I am familiar with the plaintiff in this case, Leo Felix Charles.

5. During the time in question (April 2002), there was only one bathroom at Cheshire medical. This bathroom was for the exclusive use of staff and not inmates. Inmates were aware of this fact and therefore knew that they should use their prison bathroom prior to coming to medical if they felt necessary.

6. There was another bathroom in the storage room near the medical station. This bathroom was used by inmates to give urine samples, or if they had an urgent need to use the

bathroom and could not wait until they returned to their cell. If it became necessary to use this bathroom, a male correctional officer had to accompany the inmate due to safety and privacy concerns.

7. I remember the incident in question. Mr. Charles requested to use the bathroom near the storage room. I informed him that if a guard wished to accompany him, I did not have an objection. However, since Mr. Charles and other inmates were about to return to their cells, the guard elected not to permit Mr. Charles to use the bathroom.

8. To the best of my recollection, Mr. Charles returned to his cell and did not urinate on himself in the medical area as he alleges in this lawsuit.

9. The policy mentioned above was applied uniformly and without exception. Inmates were not treated differently based on whether they were White, Hispanic or Black.

10. I am unaware of any instances in which Mr. Charles was treated differently by Cheshire medical due to his being of Haitian or African descent.

11. At no time have I interfered with Mr. Charles' access to medical care or conspired with other DOC employees to treat him differently from White and Hispanic inmates.

12. In spite of Mr. Charles' frequent accusations that I and other medical staff at Cheshire have acted in a racist manner, I have at all times dealt professionally with him and have not used racially derogatory language at him as he states in the lawsuit.

I have read the foregoing and it is true and accurate to the best of my knowledge and belief.

Pauline Husband

Subscribed and sworn to before me this 21ST day of October, 2004

_____
Notary Public

My Commission Expires Oct. 31, 2005

*Pauline Hishel* 10-21-04

3.