United States District Court
District of Connecticut

Leo Felix Charles          Civil No. 3:02CV1341 (AWT)(WIG)
    v
Jack Maleh, Et Al          February 8, 2005

Declaration In Opposition To Defendants Motion For Summary Judgment

Leo Felix Charles declares under penalty of perjury and says:

1.— I am the plaintiff in the above entitled case. I make this declaration in opposition to the defendants motion for Summary Judgment.

2.— The defendants answer and Affidavit for Summary Judgment denied the allegations made by the plaintiff and claimed that there are no material issues in dispute concerning the adequacy of the medical and dental treatment that they afforded

the plaintiff. Defendant Minzer claimed that any claims against him are barred by the statute of limitations, they claimed that there are no material issues of fact in dispute concerning plaintiff's retaliation, discrimination and conspiracy, they claimed that plaintiff had no liberty interest in being placed in segregation regarding disciplinary tickets at issue, they claimed that there are no material issues of fact in dispute and that they are immune from liability and they have qualified immunity.

3. The defendants are not entitled to Summary Judgment because there are genuine issues of material facts to be resolved. These issues are identified in the accompanying Statement of disputed factual issues filed by the Plaintiff pursuant to Rule 9(c)2 of the Local Rules of this Court. The facts are set out in this declaration.

4. On May 24, 1997 plaintiff was arrested by the Bridgeport police Department and become a State of Connecticut prisoner on May 27, 1997.

5 - Prior to being incarcerated the plaintiff was assaulted by the Bridgeport police officers and suffered damages to his right shoulder.

6 - On June 6, 1997 while incarcerated at the Bridgeport Correctional Center, plaintiff filed a sick call slip requesting to see defendant Minzer due to a persistent pain he was suffering in his right shoulder.

7 - Defendant Minzer prescribed Motrin.

8 - Plaintiff take the Motrin and experienced more severe pain in his right shoulder and discovered a defference in his clavicular.

9 - On June 23, 1997 plaintiff saw defendant Minzer and was given an X-Ray to his right shoulder.

10 - On July 14, 1997 plaintiff saw defendant Minzer again and informed him about the pain in his right shoulder. Plaintiff told him that his pain was so bad that he could not turn his arm.

3

11_ Defendant Mingzer said that he could only follow policy and told plaintiff that X-Ray of his shoulder was negative.

12_ Plaintiff continued to suffer from shoulder pain and saw defendant Mingzer again on August 1, 1997 and plaintiff explained to him what had happened to his shoulder since his last visit. Defendant Mingzer prescribed Motrin again for plaintiff.

13_ Plaintiff continued to suffer from shoulder despite the administration of the Motrin and saw defendant Mingzer again on August 6, 1997. Defendant Mingzer told plaintiff that X-Ray of his shoulder was negative and that his pain was normal and discharged plaintiff.

14_ On December 8, 1997 plaintiff was called to the prison infirmary and was given a Department of Correction Health Consultation form bearing defendant Mingzer initial that said X-Ray negative

4

15. Subsequently the plaintiff was transferred on June 2, 1998 to the Walker Receptional Management Facility and was given another chest X-Ray by intake health screening medical personal.

16. Shortly thereafter plaintiff was transfer to the Cheshire Correctional Institution.

17. On October 10, 1998 plaintiff saw defendant Maleh and told him that his shoulder goes out of alignment and caused him great pain. Plaintiff then requested to have surgery.

18. Defendant Maleh told plaintiff that X-Ray of his shoulder was negative and denied plaintiff request for surgery.

19. Subsequently on November 6, 1998 plaintiff saw defendant Minzter and told him about the excruciating pain he was suffering in his right shoulder and requested surgery.

20_ Defendant Minger denied plaintiff request for surgery, and ordered an X-Ray for plaintiff chest.

21_ During that time plaintiff continued to suffer from shoulder pain and saw defendant Maleh on June 30, 1999. Plaintiff told defendant Maleh that something is wrong with his right shoulder and requested surgery.

22_ Defendant Maleh told plaintiff again that the X-Ray's of his shoulder was negative and write in plaintiff medical file that X-Ray's was negative.

23_ During that time plaintiff gums lines began swollen, bleeding with a lot of black rings starting to form all around plaintiff upper and lower gums lines.

24_ Plaintiff saw defendant Shuly and requested treatment for his sore, swollen, bleeding gums and for all the black stuff around his upper and lower gum lines

6

25— Defendant Shivy told plaintiff that physical set up at Cheshire prison doesn't permit treatment and that dental department of Correction and University of Connecticut Medical Center are aware of this matter.

26— Plaintiff then began spitting blood all over and was unable to eat his meals due to serious sore, swollen gum lines.

27— Plaintiff requested treatment throught requests, grievances, letters to defendants Cooper, Rodriguez, Armstrong, Shivy and Young, and these defendants refused to provide plaintiff with any treatment.

28— On October 4, 2000 plaintiff received all X-ray's Diagnostic Radiologic Report and discovered that defendants Mingzer and Maleh had falsified his clinical record when they told him that X-ray of his shoulder was negative.

29— Plaintiff immediately contact defendant Cooper and request surgery.

7

30. Subsequent to the discovery of the X-Ray's of my shoulder that revealed injuries. I contacted defendant Maleh and I requested to have surgery.

31. Defendant Maleh said that he don't want to see me anymore concerning my shoulder and continue to hid my shoulder injuries by stating that the X-Ray's of my shoulder was negative.

32. To this I wrote letters to defendant Armstrong and requested to have surgery in my right shoulder.

33. Defendant Rodriguez responded to the letter that I wrote to defendant Armstrong stating that the Cheshire Correctional medical staff has addressed my medical concerns and denied my request for surgery.

34. Subsequently I saw defendant Young on March 16, 2000 and he deagnosed Periodontal Disease.

35. Subsequently I was transferred on June 23, 2001 to the Walker Receptional Management Facility and saw defendant Young due to the serious pain I was having in regard to my sore, swollen and bleeding gums.

36. Defendant Young refused to provide me with dental treatment.

37. In the course I continue to sought treatment through sick call requests, grievances and letters to defendant Rodriguez, Cooper, Shivy, Young, Armstrong. Those defendants refused to provided me with any treatment.

38. Subsequently on October 30, 2001 I received my complete medical file from the Inmate's Legal Assistance and discovered that I contracted Hepatitis, diagnosed with H-Pylori and X-Ray with Heart Enlargement that the defendants had concealed from me.

9

39 - Plaintiff immediately request treatment for these injuries. The defendants refused to provide any treatment stating that the plaintiff does not suffer any injuries or medical problems.

40 - Subsequently plaintiff filed a medical Habeas Corpus to obtain treatment for his shoulder injuries, Hepatitis H-Pylori, Heart Enlargement and a host of other medical conditions.

41 - A trial was conducted on the medical Habeas Corpus. The defendants failed to Appear in Court and was defaulted by the Court Robinson, J. on June 6, 2002.

42 - Despite the defendants failure to Appear in the medical Habeas Corpus. Despite they was defaulted by the Court, I continue to sought treatment for the injuries complained in this Federal Civil Rights action. To date I haven't received any.

43. As a result of lack of treatment by the defendants. Plaintiff was physically incapacitated and was incapable of any activities and still suffer pain to the present.

44. Plaintiff continually sought treatment from defendants Rodriguez, Cooper, Armstrong, Minzer, Maleh, Shuvy, Young, those defendants refused to provide plaintiff with any medical and dental treatment.

45. Despite plaintiff filed medical Habeas Corpus to obtain treatment. Those defendants voluntarily refused to appear in court and to this day plaintiff is unable to obtain any medical treatment for his Heart Enlargement, H-Pylori, Hepatitis, Shoulder injuries and all the medical conditions raised in this civil rights action.

46. Despite plaintiff letters complaint to defendants Rodriguez and Armstrong requesting medical and dental treatment. Defendants Rodriguez and Armstrong did nothing.

11

47. Contrary to defendants answer, Affidavit they claim they provided plaintiff with proper medical and dental treatment and denied every other allegations made by the plaintiff.

48. The foregoing Factual allegations create a genuine issues of material fact and will if proved at trial, entitled me to Judgment as explained in the Brief submitted with this declaration.

Pursuant to 28 U.S.C 1746, I declare under penalty of perjury that the foregoing is true and correct.

By
Leo Felix Charles
Prose plaintiff

Certification

I hereby certify that a copy of the foregoing was mailed, postage prepaid on this 8th day of February 2005 to:

Neil Parille
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105

By

Leo Felix Charles
Cheshire Correctional Inst.
900 Highland Avenue
Cheshire, CT 06410

Pro se Plaintiff

13