United States District Court
District of Connecticut

FILED
2005 FEB 23  P 4:32
U.S. DISTRICT COURT
BRIDGEPORT, CONN.

Leo Felix Charles          Civil No. 3:02CV1341 (AWT)(WIG)
v
Jack Maleh, Et Al          Date: February 8, 2005

## Opposition of the Plaintiff to Defendants Motion for Summary Judgment

The plaintiff, Leo Felix Charles, opposes the motion for Summary Judgment of the defendants in the instant action. A full account of the facts of this matter are set forth in the Affidavit of the plaintiff (Exhibit 1). This clearly shows that there are genuine issues of material facts. As such, the defendants are not entitled to judgment as a matter of Law.

## Statement of the Case

This is a 1983 action filed by Leo Felix Charles, pro se, seeking damages and injunctive relief based on deliberate indifference to his medical and dental needs, discrimination, conspiracy, denial of due process at disciplinary hearing, unlawful placement in Mental Institution Unit Block, denial of access to telephone and retaliation as well as state

law claims of negligence, deceipt and malpractice. The defendants move for Summary Judgment on the grounds that: 1) There are no material issues in dispute concerning the adequacy of the medical and dental treatment that the defendants afforded the plaintiff. 2) The plaintiff claims against defendant Mingzer are barred by the statute of limitation. 3) There are no material issues of fact in dispute concerning the plaintiff claim that he was retaliated against. 4) The plaintiff does not have a Constitutional rights to telephone. 5) The plaintiff did not suffer a loss of good time concerning the disciplinary tickets at issue and therefore has no liberty interest in being placed in segregation. 6) There are no material issues of fact in dispute concerning plaintiff claims of conspiracy and discrimination. 7) The plaintiff has failed to show personal involvement of defendants Armstrong and Rodriguez. 8) The defendants are immune from suit based on the doctrine of qualified immunity.

## Statement of Facts

The plaintiff declaration submitted in response to defendants motion states that he was in fact deny proper medical and dental treatment, denied due process at disciplinary hearing, denied access to telephone and

that defendants in fact did engage in a conspiracy to discriminate and retaliate against him. The defendants affidavit tell a different story. They claim that plaintiff receive proper medical and dental treatment, did in fact have access to phone and wasn't discriminated and retaliated against.

## Argument.

### Summary Judgment Standard.

**A -** To begin the plaintiff request this Court to take notice that this civil rights complaint is a continuation of a Habeas Corpus proceedings from where a Judgment of default was rendered in the plaintiff favor by the Habeas Trial Court and against the defendants concerning all the claims now herein raised in this civil action proceeding. This default Judgment relating to the medical health claims plaintiff alleged where in the defendants didn't respond to, during their failure to appear at the Habeas Trial Court order, must, as a matter of law be construed by this court as true.

The standards for Summary Judgment are well settled. The moving party bears the burden of establishing that there are no genuine issues of material fact in

dispute. See, e.g. Consarc Corp. v. Marine Midland Bank N.A. 996 F.2d 568, 572 (2d Cir 1993). This standard precludes the court from resolving disputed issues of fact. Instead the court must deny summary judgment if there are material factual issues. See e.g. Knight v. U.S. Fire Ins. Co, 804 F.2d 9, 11 (2d Cir 1986) cert. denied 480 U.S. 932 (1987). In assessing whether there are factual issues, the court is to view the evidence in the light most favorable to the non-moving party and draw all permissible inferences in that party's favor. See e.g. Anderson v. Liberty Lobby Inc. 477 U.S. 242, 247 (1986). Assessments of credibility, conflicting version of events, and the weight to be assigned to evidence are for the jury, not the court. See id. at 255. In the instant action there are genuine issues of material facts which preclude summary judgment.

B. There is evidence sufficient to support a cause of action for medical and dental treatment

The law has long accepted that prison officials must, to some extent provide for prisoners medical care. See Spicer v. Williamson, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926); Estelle v. Gamble 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 251 (1976).

4

The U.S. Supreme Court specifically held that "deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" that the Eighth Amendment prohibits. Estelle v. Gamble 429 U.S. 97, 104, 97 S. Ct 285, 292 (citing Gregg v. Georgia 428 U.S. 153, 182-83, 96 S. Ct. 2909, 2925, 49 L. Ed 2d 859 (1976). The Court has held that alleged deprivation of medical care must be sufficiently serious in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists. Hathaway v. Coughlin 99 F. 3d 550, 553 (2d Cir 1996) (Pratt, J. dissenting) (citing Nance v. Kelly 912 F. 2d 605, 607 (2d Cir 1990). A prison official cannot hide behind an excuse that he was unaware of a risk no matter how obvious. While a single instance of medical care denied or delayed, viewed in isolation, may appear to be the product of mere negligence, repeated examples of such treatment indicate a deliberate indifference by prison authorities. Todaro v. Ward 565 F. 2d 48, 52 (2d Cir 1977) But see Hathaway v. Coughlin 37 F. 3d 63, 67 (2d Cir 1994) Failure to treat a serious hip condition requiring surgery constitute deliberate indifference.

Deliberate indifference can be proved by showing a prison officials mental state. But deliberate indifference is also a standard for measuring the adequacy of prison

5

officials responses to the known medical needs of inmates and their system for allowing inmates to make their needs known. Dean v. Coughlin 623 F. Supp 392, 402 (SDNY 1985) accord Weeks v. Chaboudy 984 F.2d 185, 187 (6th Cir 1993) A determination of deliberate indifference does not require proof of intent to harm or a detailed inquiry into the defendants state of mind... The fact establish that he was deliberately indifferent. Wellman v. Faulkner 715 F.2d 269, 273 (7th Cir 1983) (Good intentions does not excuse a serious systemic deficiency. cert denied 468 U.S. 1217 (1984); Todaro v. Ward 431 F. Supp 1129, 1160 (SDNY) aff'd, 565 F.2d 48 (2d Cir 1977) Mere volume of medical attention is insufficient to defend an Eighth Amendment claim. Henderson v. Harris 672 F. Supp 1054, 1059 (N.D Ill 1987). Chronic and substantial pain indicates that a medical needs is serious Dean v. Coughlin 623 F. Supp 392, 400, 404 (SDNY 1985) The Eight Amendment requires a specific showing of pain, discomfort, or threat to health. Estelle v. Gamble 429 U.S. at 104.

C. There is Evidence Sufficient To Support the Plaintiff Claims of Denial of Medical Care.

In this instant action in order for the defendants to prevail



on this issue, they must prove that they provided adequate medical care, and it can only fulfill its obligations under the Eight Amendment to provide prisoners with adequate medical care if it can demonstrate beyond material doubt that its methods of care was reasonably calculated and expected to address the health needs of the inmates complained of.

In this instant action the defendants offers no evidence disputing or contradicting the medical ailments plaintiff suffered: Enlargement of Heart, H-Pylori, Hepatitis, shoulder pain, abdominal pain, inabilities to urinate and defecate, chronic chest pain. The defendants now avers that the numerous medical ailments plaintiff complained of including Enlargement of Heart and continue to suffer, etc, that either plaintiff never suffered these conditions and or his complaint were responded to with appropriate medical care. In fact the material issues in dispute shows that all the conditions complained of by plaintiff existed and the defendants failed to provide adequate medical care and treatment.

In a previous Habeas Corpus ruling in which these issues were address before the Court. The Habeas Court entered a Judgment of default against these very defendants concerning the same issues complained of here in when failed to Appear at trial order to

7

defend against these allegations. The Habeas Court finding of default in favor of plaintiff for defendants failure to Appear supports plaintiff allegations that these medical issues complained of herein existed, and plaintiff did not receive adequate medical care by the defendants. The court has interpreted the defendants failure to respond to allegations by conceding there from, ditto, that the allegation of the plaintiff Leo Felix Charles are correct. The defendants had an opportunity to fully and properly respond refuting these allegations that they now refute, before the State Habeas Corpus Court when trial order of these issues were scheduled by State Habeas Court. There are case laws that indicates that when an issue is brought up, if the opposing party fails to present evidence on it, and they have exclusive possession and control of that evidence I.E. Medical records supporting plaintiff claims, its almost a factual finding that you can make, is that the evidence would have been against them if they failed to meet that burden or rise to it. Thus the defendants failure to Appear at trial court in State Habeas Corpus proceedings dealing with the same issues herein raised, gave rise to the inference that the medical evidence would have been unfavorable to the defendants. see Dewitt & Blackman, Federal Jury Practice Instructions Sec. 17, 19 (3d ed 1977), U.S. v. Mahoney, 537 F. 2d 922 (7th Cir. 1976); U.S. v. Clemenss, 577 F. 2d 1252 (5th Cir 1978).

Wigmore, treatise an evidence, see 278 at p. 120 (3rd ed 1940); U.S. v. Remington 919 F.2d 246 (2d Cir 1951) Based upon following case laws where the defendants failed to Appear at State Habeas Corpus trial proceedings on these medical issues herein raised, the State Habeas Court granting plaintiff default Judgment concluded that the allegations of plaintiff Leo Charles are correct.

In support of the State Habeas Corpus concession via defendants failure to appear for trial and subsequent Judgment of default in plaintiff favor, that the allegations of plaintiff Leo Felix Charles concerning medical ailments complained of herein are true. The factual evidence of the record disprove the defendants allegation that his shoulder X-Ray was negative. In fact medical record revealed shoulder X-Ray was positive, that plaintiff didn't have an Enlarged Heart. In fact X-Ray shows plaintiff Heart Enlarged, that Liver test was normal. In fact laboratory test revealed plaintiff suffer from Hepatitis AB positive which is a disease directly affecting the Liver; that plaintiff have no symptom of Peptic Ulcer. In fact laboratory reports shows plaintiff positive for H-Pylori bacteria which causes many peptic ulcers; that no digital rectal exam was necessary since there were no sign of active bleeding. In fact, plaintiff takes pill called Terazozin which regulate "Prostate" in order to have bladder movement. That stool test was not required. A stool test in

9

fact could alone determine whether there is an obstruction in the colon that prevents evacuation of fecal matters; that plaintiff didn't need to see an outside specialist since his conditions were being treated and monitored appropriately. In fact where the defendants has denied the existence of these ailments and failed to treat them, it is factually true that plaintiff were being denied treatment and is not being monitored for these ailments appropriately. Thus requiring outside specialist treatment. In fact the defendants refuses outside specialist for simple fact that competent examination would support plaintiff allegations.

More over the defendants declarations neither includes a description of the procedure medical correctional staff employed in response to each of plaintiff complaints nor explained why these procedures were selected, nor states the basis for concluding that these procedures they alleged they undertook in response were the most likely to effectively examine and treat the complaints plaintiff complained about to the exclusion of any other procedures.

The plaintiff directs the Court attention to the sequence of events that led to his sustaining of the injuries raised herein and isolates the defendants response and treatment to these injuries, and factually concludes from juxtaposition and contradiction of the defendants claims with the factual record of this case, that a clear genuine

10

material issues of facts are in dispute, necessitating this case to move forward towards the final disposition of a trial.

The defendants claims that plaintiff complained of pain in his right shoulder from at least 1997 clinical record entry 6/6/97. That X-Ray were taken of the plaintiff shoulder in June 23, 1997. That, that X-Ray indicated that surgery was not necessary. That defendant Mingzer prescribed Motrin for the plaintiff shoulder pain in 1997 and 1998 clinical record entry 11/6/98 (Defendants Exhibit "K" Department of Correction Health Consultation X-Ray form).

In fact the factual sequence of these events began on Febuary 18, 1997, police arrested, and assaulted plaintiff, was kicked numerous time, in the chest, side of head and his arms was twisted causing severe shoulder pain. From medical examination of these injuries plaintiff sustained on 2/19/97 M.D. diagnosis concluded that plaintiff suffered contusion of pneumothorax or significant effusion. (Exhibit 2)

Upon plaintiff admittance to Department of Correction as a result of these untreated injuries that had began to worsen. Plaintiff complained to the defendants of serious shoulder pain. An X-Ray was ordered on 6/23/97, in which the X-Ray revealed at that period extent of injuries that

11

plaintiff suffered. The fact that plaintiff shoulder was dislocated. The finding of this X-Ray revealing plaintiff shoulder was dislocated is supported by fact that a later X-Ray of the same area showed a progression worsening of the shoulder injuries through non treatment resulting in egg-shaped calcification over the right scapula due to an exostosis vs Lymph node calcification vs. calcified soft tissue. (Exhibit 24) which is a condition derived from a previous untreated shoulder dislocation. From this findings of dislocated shoulder, defendants Minzer and Maleh falsified these findings concluding that X-Ray was negative and that surgery was not necessary. (defendants Exhibit K) (DOC Health Consultation form) In fact what is clearly absent from defendants conclusion is that a dislocated shoulder may not, according to severity of dislocation require surgery. But the absence of surgery does not refute fact that shoulder dislocated. It was from defendants Minzer and Maleh refusing to acknowledge the extent of these injuries and attempting to suppress the evidence of shoulder dislocation that they denied treatment causing injury to worsen. So that X-Ray in December 7, 1998 taken of the plaintiff shoulder revealed a probable calcified node in the axila superimposed upon the right axila (Exhibit 25)

12

It was here, that due to continued shoulder pain from this untreated injuries, Motrin was prescribed. From continued complaint of intense shoulder pains another X-Ray was ordered in November 15, 1999 which revealed: mild degenerative changes of the A.C. Joint. Flattening of the Lateral aspect of the humeral head. Hill sachs deformity of the Lateral humeral head had taken place from the previous untreated dislocation. (Exhibit 26).

Thus the sequence of these events clearly shows that contrary to defendants claims, plaintiff complaints of shoulder pain were ignored to the degree that it was left untreated causing a deformity. Exhibits 24, 25, 26 clearly shows that plaintiff suffered a dislocated shoulder and was never treated to have this shoulder corrected. Further to show a continuing pattern of a concerted denial of medical and a continuing falsification of the facts by the defendants. The defendants claims that plaintiff had no problem with the numerous health injuries he suffered and or that his complaints were appropriately responded to. In fact laboratory reports confirmed that plaintiff contracted Hepititis (Exhibit 33), diagnose with H-Pylori (Exhibit 34); X-Ray results supports of plaintiff medical needs, showing that he suffered an Enlarged Heart (Exhibit 35) which conditions led and continues to contributes to plaintiff frequent

13