UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


LEO FELIX CHARLES                  :
                                   :                PRISONER
        v.                         :        Case No. 3:02cv1341(AWT)
                                   :
JACK MALEH, et al.[1]              :


RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Leo Felix Charles ("Charles"), who is incarcerated at the Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut, brings this civil rights action pro se pursuant to 28 U.S.C. § 1915. Charles challenges various aspects of his confinement at Cheshire, making claims that include denial of proper medical and dental treatment, discrimination, conspiracy, denial of due process at a prison disciplinary hearing, denial of access to a telephone and retaliation. The defendants have moved for summary judgment. For the reasons that

---

[1]The named defendants are Jack Maleh, Mingzer Tung, Michael Young, Maurice Cooper, Paulyn Husband, Maylor, Hector Rodriguez, John J. Armstrong and Victor Shivy. Defendant Maleh died during the pendency of this action. On October 19, 2004, defendants filed a suggestion of death on the record. No motion for substitution of party having been filed within the time permitted by Rule 25(a)(1), Fed. R. Civ. P., the court dismissed all claims against defendant Maleh by ruling filed February 8, 2005. (See Doc. #59.)

follow, the defendants' motion is being granted in part and
denied in part.

I.    Facts[2]

Since at least 1997, Charles has complained of pain in his
right shoulder.  X-rays of the right shoulder, taken in June
1997, indicated that surgery was not required.  In 1997 and 1998,
defendant Tung prescribed Motrin for Charles' pain.  In December
1998, Charles complained of pain in his left chest area.
Defendant Tung ordered x-rays.  Charles submitted requests for
surgery for his various medical complaints to defendant Cooper.
Defendant Cooper is not a physician and cannot determine whether
surgery is necessary.  Approval and scheduling of surgery is the
responsibility of the Utilization Review Committee of UCONN
Correctional Managed Health Care.

In January 2002, Charles filed a petition for a writ of
habeas in state court concerning medical care with respect to his
complaints of right shoulder pain, hepatitis B, an enlarged
heart, nerve damage, facial lesions, rashes and H. pylori.

Defendants Shivy and Young are dentists employed by UCONN
Correctional Managed Health Care to provide dental care to

---

[2]The facts are taken from the defendants' Local Rule 56(a)1
Statement [doc. #55-2] and attached exhibits and Charles'
Statement of Disputed Factual Issues [doc. #61-1], affidavit
[doc. #61-2] with attached exhibits and declaration [doc. #61].

2

inmates in Connecticut correctional facilities.  Dental policy for the Department of Correction is established by the Utilization Review Committee of UCONN Correctional Managed Health Care.  Defendants Shivy and Young have never been members of the Utilization Review Committee.

Charles first became a state prisoner in May 1997.  In June and October 1997, gross periodontal scaling was performed on him at Bridgeport Correctional Institution.  In June 1998, Charles was transferred to Cheshire.  Defendant Shivy provided dental care to Charles on several occasions at Cheshire.  On August 5, 1998, defendant Shivy noted that Charles had poor oral hygiene.  On December 16, 1998, defendant Shivy again noted that Charles had poor oral hygiene and stressed to Charles the importance of good oral hygiene.  On September 1, 1999, Charles saw defendant Shivy and requested scaling.  Defendant Shivy informed Charles that this procedure could not be performed in the dental treatment area at Cheshire.  The procedure was done, however, on October 19, 1999.  At this same time, defendant Shivy again noted that Charles had poor oral hygiene and informed Charles that poor oral hygiene could lead to tooth loss.

On November 11, 1999, defendant Shivy noted that Charles' oral hygiene was somewhat better.  On March 16, 2000, defendant Young performed scaling at Cheshire.  On December 18, 2000,

defendant Shivy again noted that Charles' oral hygiene was poor
and placed him on the list for scaling.  Defendant Shivy stressed
to Charles that he must maintain good oral hygiene.  On January
24, 2001, defendant Shivy informed Charles that extractions were
necessary.  Charles did not want the teeth extracted.  Defendant
Shivy then told Charles to let the dental staff know if he
changed his mind.

On several occasions, Charles complained to defendant Shivy
about bleeding gums.  Defendant Shivy informed Charles that this
condition was caused by his poor oral hygiene.  Defendant Young
also treated Charles on several occasions at MacDougall-Walker
Correctional Institution.  On August 10, 2001, he performed
scaling and, on September 18, 2001, prescribed antibiotics.

Defendants Shivy and Young provided dental care within the
limitations imposed by UCONN Managed Health Care.  Periodontal
treatment, advanced treatment of the gums, has never been
provided by the Department of Correction.  In 2001, Charles
requested a specific periodontal treatment.  Defendant Young
informed Charles that this treatment was not available.  The
treatment requested by Charles was considered experimental in
2001 and has never been provided for prisoners in the custody of
the Department of Correction.  Defendant Young informed Charles
that his gum disease had been caused by years of neglect and poor

oral hygiene.  On August 7, 2002, another dentist informed Charles that treatment by a periodontist is not available to prisoners.  Charles has not requested dental treatment since that date.

Inmates at Cheshire are afforded limited telephone privileges.  An inmate may make calls only to persons on his call list.  In September 2000, Charles was unable to call his girlfriend because she was not on his call list.

In April 2002, there was one bathroom in the medical unit at Cheshire.  This bathroom was designated for use by staff only. Inmates were permitted to use a bathroom in a nearby storage room if they had an urgent need to urinate or to provide urine samples.  On April 3, 2002, Charles requested and was denied permission to use the bathroom in the storage room.

On May 22, 2002, Charles received a disciplinary report for disobeying a direct order.  He was found guilty and sanctioned with ten days' confinement in punitive segregation and thirty days' confinement to quarters.  On June 2, 2002, Charles received a disciplinary report for threats.  Charles was found guilty and sanctioned with seven days' confinement in punitive segregation and sixty days' loss of visits.  On June 10, 2002, Charles received another disciplinary report for threats.  He was found guilty and sanctioned with fifteen days' confinement in

segregation, thirty days' confinement to quarters and ninety days' loss of telephone privileges.  On June 27, 2002, Charles received a fourth disciplinary report, this time for possession of contraband.  He was found guilty and sanctioned with fifteen days loss of telephone privileges.

II.  Legal Standard

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  See Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce &

6

Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

     Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law."  Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id.  Thus, only those facts that must be decided in order to resolve a claim or defense

7

will prevent summary judgment from being granted.  When
confronted with an asserted factual dispute, the court must
examine the elements of the claims and defenses at issue on the
motion to determine whether a resolution of that dispute could
affect the disposition of any of those claims or defenses.
Immaterial or minor facts will not prevent summary judgment.  See
Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary
judgment, the court must "assess the record in the light most
favorable to the non-movant and . . . draw all reasonable
inferences in its favor."  Weinstock v. Columbia Univ., 224 F.3d
33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v.
Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because
credibility is not an issue on summary judgment, the nonmovant's
evidence must be accepted as true for purposes of the motion.
Nonetheless, the inferences drawn in favor of the nonmovant must
be supported by the evidence.  "[M]ere speculation and
conjecture" is insufficient to defeat a motion for summary
judgment.  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315
(2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil,
Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere
existence of a scintilla of evidence in support of the
[nonmovant's] position" will be insufficient; there must be

evidence on which a jury could "reasonably find" for the nonmovant.  <u>Anderson</u>, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324.  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," <u>Weinstock</u>, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial."  <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted).  Furthermore, "unsupported allegations do not create a material issue of fact."  <u>Weinstock</u>, 224 F.3d at 41.  If the nonmovant fails to meet this burden, summary judgment should be granted.  The question then becomes:  is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248, 251.

III. <u>Discussion</u>

In this action, Charles challenges the adequacy of the medical and dental care he received, and the denial of telephone privileges, and he claims he was denied due process.  He also includes claims of discriminatory and retaliatory conduct and claims there was a conspiracy against him.

The defendants make eight arguments in support of their motion for summary judgment: (1) that there are no genuine issues of material fact with respect to the adequacy of medical and dental treatment and that it was adequate, (2) that all claims against defendant Tung are time-barred, (3) that there are no genuine issues of material fact with respect to Charles' claim of retaliatory conduct and there was none, (4) that Charles does not have a constitutionally protected right to telephone privileges, (5) Charles had no liberty interest that prevented his placement in segregation because he did not lose any earned good time credit as a result of the disciplinary charges, (6) that there are no genuine issues of material fact with respect to Charles' discrimination and conspiracy claims and there was no discrimination and no conspiracy, (7) that Charles has not produced any evidence as to the personal involvement of defendants Armstrong and/or Rodriguez, and (8) that the defendants are entitled to qualified immunity.

A.    Objection to Notice of Compliance

Charles informed the court that he was unable to respond to motions in this case because he did not have access to his legal materials.  On February 8, 2005, the court ordered the defendants to locate and return the plaintiff's legal materials to him to enable him to respond to the motion for summary judgment.  The defendants filed a notice of compliance on February 15, 2005.

In reporting their compliance with the court's order, the defendants informed the court that Charles would be permitted to retain two boxes of his legal materials in his cell and arranged to have the remaining four boxes stored at the facility.  Charles was informed of the procedure to exchange materials in his cell for materials in storage.

Charles objects to the notice of compliance.  He states that he has responded to the defendants' motion for summary judgment but still needs materials relating to his criminal case, a federal habeas action and another civil rights action.  The additional materials Charles seeks are unrelated to this case and access to legal materials is not an issue raised in the complaint.  Thus, the court will not enter further orders regarding the storage of and access by Charles to his legal materials.  The objection [doc. #63] is being overruled.  If this alleged denial of access prevents Charles from responding to

11

motions filed in another case, he should seek assistance from the court in that action.

    B.   <u>State Habeas Action</u>

    Throughout his opposition, Charles refers to a default judgment entered in a state habeas action addressing the claims of denial of proper medical treatment raised in this action.  He has provided a copy of an order in <u>Charles v. Warden-Cheshire</u>, No. NNH-CV-02-0460094-S defaulting the defendant in that case for failure to appear.  (<u>See</u> Pl.'s Statement of Disputed Factual Issues, Doc. #61-2, Ex. 50.) The court has reviewed the docket sheet in the state case on the website of the Connecticut Judicial Branch.  <u>See</u> <u>http://www.jud2.state.ct.us/civil_inquiry.</u> While Charles is correct that the defendant warden in that case was defaulted for failure to appear, no judgment entered.  In fact, that defendant successfully moved to open the default and then filed a motion for summary judgment, which was granted by the state court on March 9, 2005.  Thus, all claims raised by Charles in the state habeas petition have been decided against him.

    The doctrine of issue preclusion, or collateral estoppel, precludes relitigation of a specific issue that has been litigated in a habeas corpus action.  The important consideration is that the issue was fully addressed by the habeas court.  <u>See</u>

<u>Kulak v. City of New York</u>, 88 F.3d 63, 71-72 (2d Cir. 1996)
(applying collateral estoppel to bar relitigation in a federal
section 1983 action of issues previously decided in a state
habeas proceeding).

Charles has provided copies of two state habeas petitions.[3]
(<u>See</u> Pl.'s Statement of Disputed Factual Issues, Doc. #61-2, Ex.
36 & 37.)  In the action in which summary judgment was granted
for the respondent (<u>see</u> Ex. 37), Charles challenged the adequacy
of medical care provided to him for his right shoulder, hepatitis
B, enlarged heart, chest pain, nerve damage in his feet and legs,
facial lesions, H. pylori, stomach ulcers, abdominal pain,
difficulty evacuating fecal matter and rashes over his body.  All
the medical claims asserted in the complaint in this case were
raised in that state habeas action.  Thus, Charles may not
relitigate any of these claims in this case.  Accordingly, all
claims of improper medical treatment or denial of proper medical
care are precluded from relitigation and are hereby dismissed
pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

    C.  <u>Timeliness of Claims Against Defendant Tung</u>

The defendants argue that all claims against defendant Tung

---

[3]The second habeas petition addresses Charles' claims
concerning dental care, and it is not apparent that these claims
were fully addressed by the habeas court.  <u>See</u> docket in <u>Charles
v. Commissioner of Correction</u>, NNH-CV-00-0442592-S.  That
petition remains pending.

are time-barred.  The only claims against defendant Tung are the
medical claims discussed above.  As these claims are being
dismissed for the reasons set forth above, the court need not
address this additional argument.

D.   Dental Care

Charles alleges that defendants Shivy, Young, Cooper,
Rodriguez and Armstrong were deliberately indifferent to his
claim of sore, swollen and bleeding gums.

1.   Defendants Shivy and Young

Deliberate indifference by prison officials to a prisoner's
need for serious dental care constitutes cruel and unusual
punishment in violation of the Eighth Amendment.  See Estelle v.
Gamble, 429 U.S. 97, 104 (1976).  To prevail on such a claim,
however, Charles must demonstrate "acts or omissions sufficiently
harmful to evidence deliberate indifference" to his need for
serious dental care.  Id. at 106.  He must show intent to either
deny or unreasonably delay access to needed dental care or the
wanton infliction of unnecessary pain by prison personnel.  See
id. at 104-05.

Mere negligence will not support a section 1983 claim; "the
Eighth Amendment is not a vehicle for bringing medical
malpractice claims, nor a substitute for state tort law."  Smith
v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).  Thus, "not every

lapse in prison medical care will rise to the level of a constitutional violation," id.; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)). Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care can not serve as the basis for a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), aff'd, 970 F.2d 896 (2d Cir. 1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The alleged deprivation must be "sufficiently serious" in objective terms. See id. The Second Circuit has identified several factors that are relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998)

15

(citation omitted).  In addition, where the denial of treatment causes the plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

The dental records contain a diagnosis of periodontal disease.  Charles submitted numerous requests for treatment complaining of sore, swollen and bleeding gums.  The defendants do not dispute that Charles' dental condition was serious.  Thus, the court considers the objective component of the standard to be satisfied.

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, Charles also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."  Hathaway, 37 F.3d at 66.  "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Courts considering this issue have held that the failure to provide advanced periodontal treatment does not demonstrate

16

deliberate indifference to a serious dental need.  See Hogan v. Russ, 890 F. Supp. 146, 149 (N.D.N.Y. 1995) (holding that prison policy of refusing to pay for inmate's requested visit to periodontist is not deliberate indifference to a serious medical need and that tooth extraction was an appropriate remedy).  In another case, the prisoner claimed that he was provided inadequate treatment for periodontal disease after his transfer to a different correctional facility because he did not receive periodontal scaling on a monthly basis.  The court determined that an assessment by dental care providers that diligent oral hygiene could arrest periodontal disease if accompanied by periodic dental scaling and use of antibiotics did not demonstrate deliberate indifference to a serious medical need. The prisoner had shown, at most, a difference of opinion regarding treatment.  See Perez-Gutierrez v. Lampert, No. Civ. 00-1689-HA, 2002 WL 31689536, at *7-*8 (D. Or. Sept. 30, 2002).

     Charles has provided evidence that he was repeatedly advised that proper oral hygiene could alleviate the swelling and soreness and reduce the bleeding.  He was informed that his periodontal disease had been caused by his neglect of proper oral hygiene for many years.  Charles also was told that the loose teeth could not be tightened and that the condition was irreversible.  He was advised that if the loose teeth caused too

17

much pain, the appropriate remedy was extraction.  Charles refused this treatment.  (See, e.g., Pl.'s Statement of Disputed Factual Issues, Doc. #62-1, Ex. 30 at 2.)  The dental records reflect that, despite repeated advice, Charles failed to maintain proper oral hygiene during this period.

The court concludes that Charles has failed to meet his burden of producing evidence that could demonstrate that defendants Shivy and Young were deliberately indifferent to his serious dental need by refusing to provide him with experimental periodontal treatment.  At most, he has demonstrated a difference of opinion regarding dental treatment, and that is not cognizable under section 1983.  Therefore, the defendants' motion for summary judgment is being granted with respect to the claims of improper dental treatment against defendants Shivy and Young.

2.    Defendants Cooper, Rodriguez and Armstrong

Defendant Cooper was a nurse at Cheshire, defendant Rodriguez was the warden at Cheshire and defendant Armstrong was the Commissioner of Correction during the relevant time period. None of them provided dental care.  Charles alleges that he wrote letters to all three of these defendants and spoke to defendant Rodriguez requesting dental treatment.   His claim against them is that they did not ensure that he received the requested dental care in response to his various letters.  The court considers the

18

claims against these three defendants under the standard applicable to supervisory officials.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002). Section 1983 imposes liability only on the official causing the violation. Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases. See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Prince v. Edwards, No. 99 Civ. 8650(DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) ("Liability may not be premised on the respondeat superior or vicarious liability doctrines, ... nor may a defendant be liable merely by his connection to the events through links in the chain of command.")(internal quotations and citation omitted).

> [A] supervisor may be found liable for his
> deliberate indifference to the rights of
> others by his failure to act on information
> indicating unconstitutional acts were
> occurring or for his gross negligence in
> failing to supervise his subordinates who
> commit such wrongful acts, provided that the
> plaintiff can show an affirmative causal link
> between the supervisor's inaction and [his]
> injury.

Leonard, 282 F.3d at 140.

To demonstrate deliberate indifference, Charles must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference" to a serious medical need. Estelle, 429

U.S. at 106.  He must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.  As noted above, mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud, 677 F. Supp. at 232.

Thus, to prevail on this claim against defendants Cooper, Rodriguez and/or Armstrong, Charles must demonstrate that the defendant in question inferred that his failure to take further action in response to Charles' letters would result in a substantial risk of serious harm.  "'[A]n official's failure to alleviate a significant risk that he should have perceived but did not' will not serve as a basis for an Eighth Amendment violation.  The subjective element must rise to the level of recklessness, not mere negligence."  Burgess v. Morse, 259 F. Supp. 2d 240, 249 (W.D.N.Y. 2003) (quoting Farmer, 511 U.S. at 838).

Courts within the Second Circuit have held that mere receipt of a letter from an inmate is insufficient to impute personal involvement by the correctional official to whom the letter was addressed.  See Johnson v. Goord, No. 01 Civ. 9587PKC, 2004 WL 2199500, at *7 (S.D.N.Y. Sept. 29, 2004) (citing cases); Burgess v. Morse, 259 F. Supp. 2d 240, 248 (W.D.N.Y. 2003) ("[T]he fact

that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement.") (citation omitted).

Although these defendants responded to some of Charles' letters and, thus, were aware of his dental complaints, Charles has provided no evidence in opposition to the defendants' motion for summary judgment from which the court could infer that any of these defendants were deliberately indifferent to his serious dental condition.

Deputy Commissioner Tokarz responded to Charles' June 11, 2001 letter to defendant Armstrong. He informed Charles that, on January 24, 2001, dental staff had recommended extraction of two teeth, which Charles refused, and explained that Charles' bleeding and sore gums were the result of poor oral hygiene. Charles was encouraged to follow the advice of the dental staff and to contact the dentist should he change his mind about the extractions. (See Pl.'s Statement of Disputed Factual Issues, Doc. #62-1, Ex. 27.) Also, in response to a July 24, 2001 letter from Charles to defendant Armstrong, Deputy Commissioner Tokarz noted, in an August 9, 2001 letter, that Charles had been given a panoramic x-ray on July 24, 2001 and scheduled for a follow up visit the same week to discuss the results.

On May 14, 2001, Charles wrote a letter to defendant Rodriguez complaining about dental treatment.  On October 10, 2001, Charles wrote another letter to defendant Rodriguez asking him to order the dentist to treat him.  On October 15, 2001, Charles submitted an inmate request to defendant Rodriguez requesting a dental appointment.  Medical staff responded that Charles was on the list to see the dentist and referred him to the response to his inmate grievance.

On October 10, 2001, Charles wrote to defendant Cooper demanding that he require defendant Shivy to provide experimental periodontal treatment.

In addition to these letters, Charles filed numerous grievances regarding his dental care.  The prison staff responded to the grievances and noted that Charles had been scheduled to see a dentist and reminded Charles of the need for proper oral hygiene.  Because the grievances were answered and Charles did see a dentist on numerous occasions, the court concludes that Charles has provided no evidence that could show that defendants Cooper, Rodriguez and/or Armstrong affirmatively disregarded his right to dental treatment.  Therefore the defendants' motion for summary judgment is being granted as to the claims of improper dental treatment against defendants Cooper, Rodriguez and Armstrong.

22

E.  Access to Telephone Calls

Charles states that he could not telephone his girlfriend in September 2000, because she was not on his call list.  He alleges that his request to change the call list was delayed for over a year.  The defendants argue that this claim is not cognizable because inmates have no constitutionally protected right to make telephone calls.

"Prisoners have no per se constitutional right to use a telephone."  United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000).  See also Acosta v. McGrady, No. CIV.A. 96-2874, 1999 WL 158471 at *7 (E.D. Pa. Mar. 22, 1999) ("A prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available to him.");  Bellamy v. McMickens, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) (holding that prisoners have no right to unrestricted telephone use).

Charles alleges only that he was unable to telephone his girlfriend because his request to change his call list was delayed.  He does not allege that he was unable to telephone the persons on his list or that he was unable to communicate with his girlfriend by letter.  Thus, Charles has provided no evidence in opposition to the defendants' motion for summary judgment that could demonstrate a complete denial of telephone access, and

23

consequently he fails to meet his burden of demonstrating the existence of a genuine issue of material fact with respect to this claim.  Therefore, the defendants' motion for summary judgment is being granted as to Charles' claim of denial of telephone access.

     F.   <u>Racial Discrimination</u>

    Charles states that he is of African descent.  In the section of his complaint entitled "Discrimination," Charles sets forth a claim that defendant Husband refused to permit him to use the bathroom on April 3, 2002, but allowed white and Puerto Rican inmates to use the bathroom.  In other sections of the complaint, Charles alleges that the denial of proper dental and medical treatment was racially motivated.  Charles also alleges that his request to change his telephone list was delayed while requests from white inmates were processed more quickly and that white inmates in protective custody had telephone access while he did not.  (<u>See</u> Compl. at ¶¶ 143, 146, 151, 119 and 123.)

    Prisoners are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment.  <u>See</u> <u>Turner v. Safely</u>, 482 U.S. 78, 84 (1987).  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This provision does not mandate identical treatment for each

individual; rather it requires that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  A plaintiff may prevail on an equal protection claim premised on selective enforcement of the law if he proves: "'(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)).

To prevail on his equal protection claim, Charles must demonstrate that he was treated differently from other inmates in similar circumstances and that the unequal treatment was the result of intentional discrimination.  In his complaint, Charles makes conclusory allegations that white and Hispanic inmates were provided better telephone access, dental treatment and medical treatment.  In opposition to the motion for summary judgment, he has provided no evidence to support these conclusory allegations of racial discrimination.  Consequently, Charles fails to meet his burden of demonstrating the existence of a genuine issue of material fact with respect to these bases for his equal

protection claim.  Therefore, the defendants' motion for summary judgment is being granted with respect to the claims of racial discrimination in the provision of medical and dental treatment and telephone access.

Charles also contends that defendant Husband applied the policy regarding inmate use of the storage room bathroom in a discriminatory manner when she denied him access to the bathroom on April 3, 2002, while allowing white and Hispanic inmates to use the bathroom.  The defendants have submitted defendant Husband's affidavit in which she states that inmates were permitted to use the bathroom in the nearby storage room in emergency situations and to provide urine samples.  (See Defs.' Local Rule 56(a)1 Statement, Doc. #55-2, Ex. C.)  Defendant Husband states that she told Charles he could use the bathroom if a correctional officer would escort him and the correctional officer declined.  Defendant Husband also disputes Charles' allegation that he urinated on himself because he was denied bathroom access.  The defendants argue that summary judgment should be granted on this claim because defendant Husband has denied Charles' allegations.  However, in support of his opposition, Charles has submitted declarations from inmate Orgeby Holby and former inmate Gregory Gaymon.  (See Pl.'s Statement of Disputed Factual Issues, Doc. #62-1, Ex. 51 & 52.)  The inmates

corroborate Charles' version of the incident.  Consequently, the plaintiff has created a genuine issue of material fact with respect to this basis for his equal protection claim. Accordingly, the defendants' motion for summary judgment is being denied with respect to the equal protection claim against defendant Husband.

G.    Denial of Due Process

Charles alleges that he was denied due process at the disciplinary hearings conducted by defendant Maylor on June 7, 2002, which related to the May 22, 2002 disciplinary report, and on June 19, 2002, which related to the June 10, 2002 disciplinary report, because defendant Maylor did not permit Charles to call witnesses.

To state a claim for violation of procedural due process, Charles first must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law.  See Tellier v. Fields, 230 F.3d 502, 511 (2d Cir. 2000) (citations omitted). In accordance with the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), the Second Circuit applies a two-part test to determine whether an inmate possesses a protected liberty interest.  See id.  An inmate has a protected liberty interest "only if the deprivation . . . is atypical and

27

significant and the state has created the liberty interest by statute or regulation." Id. (citations and internal quotation marks omitted).

Charles challenges two of the disciplinary charges he received between May 22, 2002 and June 27, 2002.  He received sanctions of ten days' confinement in punitive segregation and thirty days' confinement to quarters on the May 22, 2002 disciplinary charge and sanctions of fifteen days' confinement in punitive segregation, thirty days' confinement to quarters and ninety days' loss of telephone privileges on the June 10, 2002 disciplinary charge.

Inmates should reasonably anticipate confinement in segregation.  See Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993); see also Frazier v. Coughlin, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that 120 day confinement in segregation followed by 30 day loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process); Rosario v. Selsky, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec 28, 1995) (holding that 120 days' confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison).

The Second Circuit has not adopted a bright line test to determine when confinement constitutes an atypical and significant hardship.  However, "the decisions in the Second Circuit  are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin."  Williams v. Keane, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases).  See also Nicholson v. Murphy, No. 3:02cv1815(MRK), 2003 WL 22909876, at *10-*11 (D. Conn. Sept. 17, 2003) (holding that confinement in segregation for thirty days or less is not an atypical and significant hardship); Fine v. Gallow, No. 3:97cv497(SRU), 2000 WL 565232, at *9 (D. Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days confinement in punitive segregation and fifteen days confined to quarters, and seven days confinement in punitive segregation, fifteen days confined to quarters and thirty days loss of commissary privileges did not constitute an atypical and significant hardship); McNellis v. Meachum, Civ. No. 2:92cv936 (PCD) (D. Conn. Oct. 4, 1995) (holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under Sandin).

Although it is unclear whether Charles served the periods of confinement in punitive segregation consecutively, the court

aggregates the two sanctions for purposes of considering Charles'
claim.  See Sealey v. Giltner, 197 F.3d 578, 587 (2d Cir. 1999)
(requiring the court to aggregate sanctions that cause the inmate
to serve consecutive time in segregation).  Under the challenged
sanctions, he served twenty-five days in segregation.  Even if
the court were to include the third, unchallenged sanction,
Charles served in the aggregate thirty-two days in segregation.
Charles alleges no facts suggesting that the sanctions he
received were qualitatively different from ordinary prison life.
Thus, the court concludes that Charles' twenty-five day
confinement in segregation is not an atypical and significant
hardship and does not give rise to a liberty interest under
Sandin.  In addition, Charles has no constitutional right to
telephone use or to be free from cell restrictions.  See Malchi
v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000) (holding that
"30-day loss of commissary privileges and cell restriction do not
implicate due process concerns"); Frazier, 81 F.3d at 317-18
(holding that 30 day loss of recreation, loss of commissary
privileges and telephone use did not state a cognizable claim for
denial of due process).  Thus, these sanctions do not implicate a
protected liberty interest and do not support a claim for denial
of due process.

Therefore, the defendants' motion for summary judgment is being granted with respect to the claims of denial of due process.

H.    Retaliation

Charles alleges that defendants Rodriguez and Armstrong caused him to be transferred to Garner Correctional Institution in retaliation for his letters seeking medical care and the filing of his state habeas petition. (See Compl. ¶ 177.) The defendants contend that Charles' retaliation claims are speculative.[4]

To state a claim for retaliation, Charles must allege facts demonstrating "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). Generally, a plaintiff can successfully oppose a motion to dismiss, or a motion for judgment on the pleadings, if he alleges facts that, if proven, would support the cause of action. However, because of the "ease with which claims of retaliation may be fabricated," the court "examines prisoners' claims of

---

[4]The defendants refer to retaliation claims set forth in paragraphs 216 through 221. The complaint, however, contains only 177 paragraphs. The court has applied defendants' arguments to the references to retaliatory conduct the court finds in the complaint.

31

retaliation with skepticism and particular care." <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983).

In the statement of claims in the complaint, Charles alleges that he was transferred to Garner Correctional Institution because he wrote letters seeking medical care and filed a petition for a writ of habeas corpus in state court. Although writing letters and filing a habeas action is constitutionally protected conduct, Charles has presented no evidence in opposition to the motion for summary judgment that could support a conclusion that this constitutionally protected conduct was the reason for that transfer. Consequently, Charles has failed to meet his burden of demonstrating the existence of a genuine issue of material fact with respect to his retaliation claims, and the defendants' motion for summary judgment is being granted as to the plaintiff's retaliation claims.

I.   <u>Conspiracy</u>

In his claims for relief, Charles asserts that the defendants conspired against him in various ways: that the failure to properly treat his separated shoulder was the result of a conspiracy among defendants Maleh, Cooper, Rodriguez and

Armstrong to harm and intimidate him (see Compl. at ¶ 125); that a mental health hold was placed on him as a result of a conspiracy between the psychiatrist and defendants Rodriguez and Armstrong to ensure that Charles was confined with mental health inmates in general population (see Compl. at ¶ 148); and that defendants Rodriguez and Armstrong conspired with others to have Charles transferred to a mental health unit, with the subsequent goal of forcing medication on him (see Compl. at ¶ 170).

A claim of conspiracy to violate civil rights requires more than general allegations. See Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993) (citations omitted); see also Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990) (vague, prolix allegations without pleading any overt acts is insufficient to state a claim of conspiracy); Powell v. Kopman, 511 F. Supp. 700, 704 (S.D.N.Y. 1981) (vague and conclusory statements without specific facts are not enough).  This requirement was not changed by the Supreme Court's decision in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), which proscribes the application of a "heightened pleading standard" in civil rights cases.  Cases decided after Leatherman continue to hold that a claim of conspiracy must set forth more than mere conclusory allegations to withstand a motion to dismiss.  Rather than constituting a heightened pleading standard, the requirement

merely implements Rule 8(a)(2), Fed. R. Civ. P., which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." See Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (holding that vague, general or conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (same).

The defendants do not specifically address Charles' conspiracy allegations. The court notes, however, that Charles has presented no evidence in his complaint or in opposition to the motion for summary judgment regarding his conspiracy claim. Charles merely concludes that various actions were the result of a conspiracy, and thus his claims of conspiracy are conclusory at best. Thus, the plaintiff has failed to state a claim for conspiracy, and the conspiracy allegations are being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

J.    State Law Claims

Supplemental or pendent jurisdiction is a matter of discretion, not of right. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966). Where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts.

See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).  To the extent that the complaint may be construed to assert state law claims relating to the federal claims of denial of medical and dental care, denial of telephone privileges, denial of due process, retaliation, conspiracy and racial discrimination, except the racial discrimination claim against defendant Husband, the court declines to exercise supplemental jurisdiction over those claims.

IV.  Conclusion

Defendants' Motion for Summary Judgment [**doc. #55**] is hereby **GRANTED and DENIED in part**.  All claims of improper medical care are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as precluded by the judgment, adverse to Charles, in his state habeas action.  All claims of conspiracy are also **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  Summary judgment in favor of the defendants is being granted as to all other federal claims except the claim for racial discrimination against defendant Husband.  The court declines to exercise supplemental jurisdiction over any state law claims relating to the federal claims that have been dismissed or as to which summary judgment has been granted in favor of the defendants.  The Plaintiffs Objection to Defendants Notice of Compliance with the Court's

Ruling and Order Dated February 9, 2005 [**doc. #63**] is **OVERRULED**.

The sole remaining claim is the racial discrimination claim against defendant Husband.

It is so ordered.

Dated this 8th day of March 2006, at Hartford, Connecticut.

            /s/
_____
     Alvin W. Thompson
United States District Judge
